E. Leo Milonas, J.
This opinion deals with agreed questions of law and stipulated sets of facts submitted by the Bronx County District Attorney and defense counsel. Three selected cases are considered. Indirectly involved are many scores of similar cases currently pending in the Bronx Criminal Court.
The questions of law presented for resolution are as follows:
1. Do the facts in each case reveal a “ common scheme of plan ” such that the individual checks may be aggregated to reach grand larceny levels ?
2. If the welfare recipient receives payments as a result of misrepresentations made to the Department of Social Services, can the recipient be charged with grand larceny arising out of that fraud, notwithstanding the fact that said recipient would have been entitled to some payment, albeit a lesser sum, without the misrepresentation?
3. If the depositions make out felony complaints, can the cases be reduced and tried on the appropriate misdemeanor level without being barred by the two-year misdemeanor Statute of Limitations.
The agreed statements of facts in the cases are:
1. People v. Agapito Soto X311203.
From December, 1970 until March, 1971, the defendant received from the Department of Welfare semi-monthly checks in the amount of $178 each, except that in March, 1971, she received an additional $466 for a total of $1,677.80 for the stated time period. During this time, the defendant concealed the fact that her husband was living with her and that had she revealed this to the Welfare Department, she most likely would have received less or no assistance, although this cannot be determined at this time. The concealment alleged in the com *493 plaint ended in March, 1971, and the defendant was arraigned approximately two years and three months later, on June 15, 1973.
2. People v. Ada Singleton X311207.
From October 1, 1966 until March 15, 1971, the defendant received from the Welfare Department semi-monthly checks in the amount of $60 to $65 each. During this time the defendant concealed the fact that she was receiving $32.50 semi-monthly in Social Security death benefits and that had she revealed this fact her welfare payments would have been reduced by that amount, although she still would have been eligible for some assistance. The concealment alleged in the complaint ended on March 15, 1971, after defendant had received $3,267.20 more than she was entitled to and the defendant was arraigned approximately two years and three months later on June 15,1973.
3. People v. Rebecca Cooper X311598.
From September, 1969 to December 31, 1970, the defendant "received from the Department of Social Services semi-monthly checks in the amount of $180 each on the average. During this |ime, defendant concealed the fact that from September, 1969 hntil January, 1970 the defendant received $20 per week from her common-law husband, and that from January, 1970 to January, 1971 she received $50 per week from him. Had she revealed this to the Welfare Department, her benefits would have been reduced accordingly, although she still would have been eligible for some assistance. The concealment alleged in the complaint ended January 1, 1971 and the defendant was arraigned approximately two and one-half years later on June 21,1973.
Welfare payments whether in the form of aid to dependent children, rent subsidy, disability benefits, direct supports or supplementary food stamps are received by beneficiaries solely on the basis of need. The State has an interest in regulating the distribution of such funds to assure that all its citizens eligible and desirous of receiving such benefits are provided for. Indeed, the individual recipient has a substantial privilege, if not a right, to such benefit based solely upon his establishing fináiicial need.
In Shapiro v. Thompson (394 U. S. 618) the Supreme Court of the United States struck down residency requirements imposed by several States as a precondition to receiving such benefits. The court, tying such benefits to the constitutional *494 right to travel freely throughout the country, held that the denial of such benefits constituted an unreasonable and unconstitutional restraint upon the exercise of the inherent right to travel.
In each of the above cases, the People have charged the defendant by a felony complaint with violations of section 145 of the Social Services Law, a misdemeanor, and grand larceny in the second degree (Penal Law, § 155.35), a felony. CPL 30.10 provides the period of limitation for prosecution of various offenses. Paragraphs (b) and (c) of subdivision 2 provide that a prosecution for a felony, other than a class A felony, must be commenced within five years after commission thereof and that prosecution for a misdemeanor must be commenced within two years of the commission of the crime. Exceptions dealing with fiduciary relationships and absence from the jurisdiction are provided to extend the period of limitations but are inapplicable to the instant cases. Since it is apparent that the prosecutions were not initiated within the two-year Statute of Limitations for a misdemeanor, the cases must be deemed as time barred unless the charges can be prosecuted as felonies.
A preliminary question of law immediately interposes itself, s and that is whether the acts allegedly committed by the defendants constitute any form of larceny. It is undisputed that the defendants’ original representations at their interviews with welfare case workers occurred prior to the receipt of any of the checks involved and it is further beyond dispute that no two checks were received at the same time. Whether these series of acts can be found to constitute continuous crimes are the determining factors.
Not every taking of another’s property constitutes the crime of larceny. Larceny, as defined in section 155.05 of the Penal Law, is as follows2. Larceny included a wrongful taking, obtaining, or withholding of another’s property, with the intent-prescribed in subdivision one of this section, committed in any of the following ways: (a) By conduct heretofore defined as common law larceny by trespassory taking, common law larceny by trick, embezzlement or obtaining property by false pretenses ” (emphasis added).
The elements of proof required to establish larceny by false pretenses are:
(a) criminal intent to deprive the owner of property;
(b) that defendant made a false representation of a past or existing fact;
*495 (c) that defendant knew the representation was false when made;
(d) that defendant obtained property of another; and
(e) that the representation was believed and relied on by the person to whom made and that person was in whole or in part induced thereby to give his property to the defendant. (People v. Kirk, 62 Misc 2d 1078; People v. Lehrer, 182 Misc 645; People v. Levitas, 40 Misc 2d 331.)
The felony complaints, in the instant cases, on their face expressly allege the first four elements of the crime of larceny by false pretenses. ’ The payments to the defendants were occasioned by an alleged willful concealment of facts which if known to the Department of Social Services (formerly the Department of Welfare) would have resulted in the curtailment of funds in excess of the sum which the defendants may have been entitled to. It may be argued, and indeed it has been done so successfully in a number of jurisdictions, that the concealment of such changes in personal circumstances as involved in the present cases does not rise to the level of fraud or larceny by false pretenses absent proof of a specific duty to disclose such information. (People v. Martin, 237 Cal. App. 2d 770; Commonwealth v. Thomas, 166 Pa. Super. Ct. 214; People v. Vida, 2 Mich. App. 409, affd. 381 Mich. 595.) However, as noted in Commonwealth v. Thomas (supra) and People v. Martin (supra), this result flowed from the fact that there was no specific written regulation governing the requirement of disclosure of change of circumstance. The courts in the above-cited cases indicated that the result would be otherwise if such regulations existed. In the instant cases, the regulations governing the disbursement of funds by the Department of Social Services specifically require such disclosure by recipients of public assistance.
Upon the .stipulated sets of facts, this court is being asked to determine whether or not reasonable cause exists to believe that a felony was committed by the defendant in each of the respective cases. This.is the function of a preliminary felony hearing (CPU 180.70). At such a hearing, the People are not required to present a prima facie case under the provisions of the Criminal Procedure Law. The mere fact that one or more elements of an offense is not established to the degree required at trial or in the grand jury does not require dismissal of the complaint at this juncture. .
The stipulations made by the parties do not reach the question of reliance by the Department of Social Services upon the representations or omissions made by the defendants. The court, *496 therefore, is asked to speculate as to the proof which might be offered by the People on the issue of reliance. This is an impossible task. In order to reach the questions of law presented for resolution, this court can necessarily presume that were a preliminary hearing held, sufficient evidence of reliance by the Department of Social Services would be presented.
On the first question of law, that is, whether each case reveals a ‘ ‘ common plan or scheme ’ ’ such that the individual checks may be aggregated to reach grand larceny levels, the Court of Appeals in People v. Cox (286 N. Y. 137, 145) observed that: “ Logic and reason join with all the authorities that have considered the question, in holding that the People may prosecute for a single crime a defendant who, pursuant to a single intent and one general fraudulent plan, steals in the aggregate as a felon and not as a petty thief. If this were not so, a crime of grand larceny would go unpunished and a felon escape because the law classified him only as a petty thief.” The court added the precaution, however, that (p. 141) a: “ defendant could be convicted of grand larceny only if his takings were motivated by ‘ a single and sustained criminal impulse and in execution of a general fraudulent scheme. ’ ’ ’
In determining what constitutes a “ single intent ”, the courts have held that “ continued accretion, the adding of the products of the thefts from the same source into a stock pile of stolen goods [is a good] indicium of a sustained purpose.” (People v. Daghita, 276 App. Div. 20, 22, mod. on other grounds 301 N. Y. 223.) (See, also, 52A C. J. S., Larceny, § 53.) In the cases at bar, it is uncontroverted that the defendants collected moneys from a single source, that the benefits received were used for their own needs and that the benefits derived from a source of predictable regularity.
In the recent case of People v. Lofton (73 Misc 2d 285 [Crim. Ct., N. Y. County, 1973]), the court was asked to consider the issue of whether acceptance in cashing of successive welfare checks by the defendant, where such checks were obtained by an initial misrepresentation, constituted the crime of petit larceny (Penal Law, § 155.25). In arriving at its conclusion that each indorsement of a check constituted a separate taking, the court in Lofton placed considerable importance upon the statement imprinted on the back of each check cashed. The statement read as follows:
" statement by payee: By endorsing or cashing this check, I state that I and the members of my family whose support is included, in this check are destitute and still in need of public *497 assistance. I further state that all wages, earnings, income, property or resources which I or members of my family have or have received or are receiving have been reported to the Department of Social Services. I will notify the Department of Social Services of any change in our circumstances, finances, employment or other resources.”
In Lofton, the court, sitting without a jury, was able to determine on the basis of testimony whether the defendant possessed a specific intent at the inception to perpetrate a continuing scheme to derive moneys to which she was not entitled. This court has not been placed in such an enviable position. In the instant cases, no evidence has been presented which would indicate one way or the other that the defendants ever read the “ Statement By Payee ” printed on the reverse side of each check. While it is evident that the defendants could not have received any benefits without indorsing the checks, the court cannot determine whether such indorsements were made pursuant to an original plan to conceal salient facts regarding the defendants ’ eligibility. If it can be established at an evidentiary hearing or trial that the defendants concealed such operative facts with the expectancy of receiving undeserved benefits on a continuing basis, such would constitute the crime of larceny by false pretenses as a felony.
The second question of law is more difficult to resolve. The defendants urge that the Department of Social Services did not rely upon the misrepresentations or omissions, if any, of the defendants since, and this is undisputed, the defendants would be entitled to some assistance anyway. The defendants cite People v. Levitas (40 Misc 2d 331 [Bronx County, 1963]) and People v. Kirk (62 Misc 2d 1078 [Rockland County, 1969]) in support of their position. In Levitas, the defendant gave false statements to the Temporary State Rent Commission, but the court held that his tenants did not actually rely upon those statements in paying a higher than authorized rent, that there was no larceny involved. In People v. Kirk {supra), the defendant misrepresented his professional qualifications. The court found such misrepresentation immaterial since the defendant was paid for work actually performed satisfactorily, and that the payments were, therefore, not made in reliance on his false statements.
In the cases presently before this court, the payment of benefits is directly dependent upon the need of the recipient. If such need is found to be lacking, so is the basis for bestowing benefits. Even with due regard to the special niche in which *498 public assistance is held by virtue of the Shapiro v. Thompson decision, this court cannot say as a matter of law that the Department of Social Services would have dispensed these funds to the defendant in total disregard of its established guidelines and regulations had the true facts been disclosed. (But, see, People v. Levitas, supra.)
No New York court has met squarely the issue of whether entitlement to .some benefits insulates the recipient from criminal prosecution or receiving excess payments without disclosing such fact to the proper authorities.
People v. Hubbard (10 A D 2d 735 [2d Dept., I960]) is not dispositive of the issue. In that case, the Appellate Division concluded that although the recipients’ benefits would have been curtailed as a result of the disclosure of the misrepresentation, that from the evidence adduced at trial, such stoppage would be subject to renewal upon application. This determination was based upon a finding that had the true facts been known, the recipient would have been entitled to double the amount of benefits he was then receiving. Whether the result would have been the same had the recipient received greater benefits than he was entitled to is a matter of pure speculation.
The court’s research has revealed a paucity of cases in other jurisdictions on the issue. In Palmer v. Commonwealth of Kentuchy (479 S. W. 2d 615 [Court of Appeals of Kentucky, 1972]), the court held that the defendant’s receipt of food stamps on a separate application, after her husband had already received the family’s allotment on his own application, could not be prosecuted criminally. In that case, the defendant’s statement that she had not applied for food stamps in any county, though technically correct, was in fact false since her husband had already applied for and received the family’s food stamp allotment for that month. The court’s rationale was in large part affected by two factors, that the additional food stamps had been used for the purpose intended (purchase of food items) and that since the defendant’s family had continuing eligibility for food stamps that the allotment for the following month could be reduced to bring the allowance within legal limits. This court is not convinced of the logic or efficacy of such a determination.
Since these actions were brought at the behest of the Department of Social Services, one must assume that it was the object of the department and the District Attorney’s office that the defendants be dealt with as criminal offenders and not merely as errant debtors. Indeed, it is against public policy that the courts or associated agencies, notably the District Attorney’s *499 office, be used as collection agencies. Although this court had grave reservations with the wisdom of existing criminal law with respect to welfare frauds in this State and treating the defendants in the instant cases as felons, the facts as presented compel holding these cases for the action of the grand jury.
Finally, we arrive at the last question of whether the cases may be reduced and tried as misdemeanors without being barred by the two-year .Statute of Limitations. In People v. Lohnes (76 Misc 2d 507), Justice Flyxx in a decision concerning a corollary question makes an exhaustive study of applicable case law. People v. Kohut (30 N Y 2d 183, 192 [1970]) is cited for the proposition that the defense of the Statute of Limitations is an issue to be raised upon the trial and not on a motion addressed to the sufficiency of the indictment (or felony complaint). Since it is reasonably certain that such a defense would be raised .should the People actually seek to try these cases as misdemeanors, this court has the admonition that such a defense would serve as a bar to prosecution. (See People v. Di Pasquale, 161 App. Div. 196 [3d Dept., 1914], where the court reversed the conviction of a defendant who had been indicted for murder but convicted only of an attempt.)
Were the results otherwise, the Statute of Limitations would be valueless. As applied to the cases at bar, it would be manifestly unjust to permit the prosecution to use the vehicle of indictment or felony complaint to 11 overcharge ’ ’ a defendant and then reduce the charge solely to avoid the stricture of the limitations provisions.
The District Attorney has stated that any reduction of the charge would be considered only within the context of a plea negotiation. Under such circumstances, a reduction is permissible as the Statute of Limitations can be waived expressly (People v. Blake, 121 App. Div. 613 [1st Dept., 1907], affd. 193 N. Y. 616; People v. Brady, 257 App. Div. 1000 [2d Dept.]). A plea of guilty to such a reduced charge, if knowingly, understandingly and intelligently made would constitute a waiver of this defense as well as any defect not jurisdictional (People v. Earing, 71 Misc. 615, affd. 146 App. Div. 903, app. dsmd. 204 N. Y. 584).
Accordingly, the cases are held for the action of the grand jury.