OPINION OF THE COURT
Rose L. Rubin, J.
In this welfare fraud case, a significant question of law is raised by defendants’ pretrial motions to dismiss the indictment. The felony indictment charges the defendant with stealing more than $1,500 from the New York City Department of Social Services. The amount of the larceny is arrived at by aggregating welfare checks allegedly fraudulently received between July 16, 1969 and October 30, 1973, and then deducting the sum of welfare assistance to which defendants were entitled during this period. As a felony, the relevant Statute of Limitations is five years and the indictment is not *839 barred as untimely. Defendants’ motions are predicated on the theory that fraud with respect to each check is a separate misdemeanor, thus making the two-year misdemeanor Statute of Limitations applicable. As a misdemeanor, the indictment is time-barred.
In support of their motions, the defendants point out that each of the checks had the following imprinted statement on the back: "I, the undersigned, am aware that I am required to report to the New York City Department of Social Services any income, resources or other circumstances that may affect the amount of public assistance payments to me and my family. Such changes include inheritance, wages from part-time job, decrease in family size, etc. If my check appears in error (more than $5.00 greater than my prior check without explanation), I am to notify the New York City Department of Social Services before cashing. I understand this before cashing.”
Defendants contend that each separate cashing of a welfare check with the above indorsement acknowledged by the payee results in a separate crime, in this case a series of misdemeanors which are time-barred under CPL 30.10 As authority for their position, defendants rely on People v Lofton (73 Misc 2d 285), where the court, after trial, determined that the defendant’s reaffirmation on each check of her obligation to report any change in circumstances which was the predicate for eligibility recertification by the Department of Social Services constituted the cashing of each check a separate larceny. That conclusion was made after trial and on failure of evidence of a common scheme or plan.
In contrast, in People v Soto (76 Misc 2d 491), which involved a similar series of welfare checks, the court refused, in advance of trial or evidentiary hearing, to reach any conclusion on the basis solely of the indorsement under a similar recital.
Both Lofton and Soto quote People v Cox (286 NY 137); in Soto (p 496) as follows: "On the first question of law, that is, whether each case reveals a 'common plan or scheme’ such that the individual checks may be aggregated to reach grand larceny levels, the Court of Appeals in People v. Cox (286 N. Y. 137, 145) observed that: 'Logic and reason join with all the authorities that have considered the question, in holding that the People may prosecute for a single crime a defendant who, pursuant to a single intent and one general fraudulent *840 plan, steals in the aggregate as a felon and not as a petty thief. If this were not so, a crime of grand larceny would go unpunished and a felon escape because the law classified him only as a petty thief.’ The court added the precaution, however, that (p. 141) a: 'defendant could be convicted of grand larceny only if his takings were motivated by "a single and sustained criminal impulse and in execution of a general fraudulent scheme.” ’ ” The holding in Cox with reference to accumulating all of the alleged incidents into one taking of felony dimension is cited with approval in People v Rossi (5 NY2d 396, 400) and in People v Rossi (11 NY2d 379, 382, n 1).
Review of the record on appeal in People v Hunter (34 NY2d 432) is also instructive in determining whether the individual checks may be aggregated to reach grand larceny levels. In Hunter (supra), one of the issues before the court was whether a defendant, who applied for and received public assistance payments for the periods from July, 1970 to November, 1970 and from December, 1970 through February, 1971, while at the same time receiving but failing to report income from employment, was properly convicted of the felony of grand larceny in the third degree and violation of section 145 of the Social Services Law. The court concluded that the proof at trial was insufficient to sustain the grand larceny conviction, but that defendant was properly convicted of violation of the Social Services Law. In sustaining the conviction, the court stated (p 438): "the prosecution is required to show that the defendant was not entitled to benefits received, whether the charge is larceny under the Penal Law or a violation of section 145 of the Social Services Law. However, the latter statute contains no requirement of a specific dollar amount, and contains a presumption that concealment of income is deliberate and material. The larceny statute contains no such presumptions and requires independent proof of intent and materiality. On the present record, while the prosecution’s case is very nearly complete, the proof as to larceny is insufficient in that evidence specifically showing that the defendant was not entitled to the amounts he received was not introduced.”
The court defined the requisite proof to sustain a larceny conviction (pp 439-440) as follows: "The extent of the undeserved benefits is especially important here where the conviction is for grand larceny in the third degree, which requires proof that the specific value of the property wrongfully oh *841 tained is in excess of $250. To sustain a conviction of grand larceny in the third degree on facts indicating public assistance fraud, the prosecution must present proof establishing that the defendant received public assistance to which he would not have been entitled had the Department of Social Services known the true facts, and further establishing that the specific value of this public assistance was in excess of $250. On the present record we find that the evidence is insufficient to establish these elements and consequently the larceny conviction is invalid and must be reversed.”
Thus, the Court of Appeals, while assuming the conduct with respect to the series of checks over the period recited in the indictment could constitute larceny, ruled against a larceny finding because of insufficiency of evidence of lack of entitlement to the amounts defendant received.
In People v Prim (47 AD2d 409) the indictment charged that the sum of $5,763.62 was the actual amount fraudulently received or stolen during a 16-month period in a welfare fraud case. After pointing out that the People had introduced evidence at trial showing nonentitlement to the moneys received, the court distinguished People v Hunter (34 NY2d, supra), finding that unlike Hunter, the record in Prim supports the conviction of grand larceny in the second degree.
Implicit in Hunter (supra) and Prim (supra) is each court’s acceptance of the validity of aggregating the sums of the checks to reach felony weight where the record establishes the amount of public assistance received in excess of the amount to which the recipient was entitled. Here the issue is raised explicitly.
This court reads the Hunter (supra) decision as a disapproval of any motion that Lofton (73 Misc 2d 285, supra) can be interpreted to prohibit, as a matter of law, the aggregating of individually cashed welfare checks to support a felony indictment. The critical issue determining the validity of aggregating the checks is whether receipt of the checks occurred under a common scheme or plan. Evidence on this point must await the trial.
Defendants also move for court inspection of the Grand Jury minutes. That motion is granted to the extent that the court has read the Grand Jury minutes. Upon reading the minutes, the court determines that sufficient legal evidence was adduced before the Grand Jury to sustain each count of the indictment as to each defendant. Defendants’ motions to *842 dismiss the indictment for legal insufficiency at this time are premature and are, therefore, denied.