200 N.J. Super. 137 (1984)
490 A.2d 386
STATE OF NEW JERSEY, PLAINTIFF,
v.
SARAH TYSON, DEFENDANT.
Superior Court of New Jersey, Law Division Criminal, Passaic County.
Decided December 7, 1984.
*139 William F. Gradisher, Asst. Prosecutor for plaintiff (Joseph A. Falcone, Prosecutor).
William E. Wobbekind, Asst. Deputy Public Defender for defendant (Terence P. Corcoran, Deputy Public Defender).
MARTIN, J.S.C.
In issue is the question whether N.J.S.A. 2A:111-3, N.J.S.A. 2C:20-4 and N.J.S.A. 30:4D-17, as they relate to indictment 0500-84E, set forth continuing offenses.
Defendant is charged in the first count of indictment 0500-84E with the obtaining of financial assistance by false representation, in the second count with the obtaining of food stamps by false representation, and in the third count with medicaid fraud. The facts are not in dispute for purposes of this motion. Defendant received monthly checks representing social service benefits  Welfare and Food Stamps  together with periodic sums for medical assistance. She completed the required initial application and thereafter every six months eligibility renewal forms, thereby receiving continuous benefits from July of 1974 through August of 1983.
If the offenses are not continuous, part of the state's allegations, as contained in the indictment are subject to the statute of limitations, N.J.S.A. 2C:1-6(c).
The specific issue in question, particularly as it relates to Title 2C, has not been decided in New Jersey.
In State v. Weleck, 10 N.J. 355 (1952), the New Jersey Supreme Court dealt with the issue of whether misconduct in office was a continuing offense. The court in Weleck pointed out that "an indictment for misconduct in office may allege a series of acts spread across a considerable period of time," Id. at 374. In Weleck, however, the court also noted that extortion *140 and attempted extortion were not continuous offenses. In extortion and attempted extortion cases, "the offense is complete with the taking and not before, and the statute of limitations runs from the time of the taking. Similarly the offense of attempted extortion ... is complete with the making of the demand and not before, and the statute of limitations runs from the time of the demand." Id. at 375.
Therefore, it can be argued by analogy that, in a welfare case such as in the present situation, there was a series of demands, or receipts of individual payments, and each demand or receipt constituted a separate offense or taking. In the case at bar, however, there existed more than a mere series of receipts and demands.[1] The defendant's course of conduct was one scheme extending over a period of time involving the same victim perpetrated by the same deception. To reiterate the pertinent phrase of Weleck, "the statute of limitations runs from the time of the taking" Id. at 375. The taking in the case at bar was not complete because the fruits of the defendant's scheme were received in installments rather than in a lump sum. The form of receipt is of little relevance. The fact that this was performed pursuant to a common scheme spread across a period of time is.
The U.S. Supreme Court in Toussie v. U.S., 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970) held that failure to register for a draft was not a continuous offense because it was not explicitly made so by the Selective Service statutes.
However, the Supreme Court noted, in rejecting the continuous offense argument that
"... considerations do not mean that a particular offense should never be construed as a continuous one. They do however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such *141 that (Congress) must assuredly have intended that it be treated as a continuous one." Id. at 115, 90 S.Ct. at 860. (emphasis supplied)
This matter is distinguishable from Toussie. In Toussie, a negative act (failure to register) at a specific time completed the offense. In the present case, the defendant repeatedly reaffirmed her eligibility and continued to receive the benefits of this representation. The acts of the defendant prevent the application of a "specific time" of offense analysis.
Other jurisdictions have specifically dealt with the issue before the court. People v. Peck, 93 Misc.2d 838, 839, 403 N.Y.S.2d 624-625 (N.Y. Crim. Ct. 1973), interpreted the holding in People v. Lofton, 73 Misc.2d 285, 340 N.Y.S.2d 984 (N.Y.C. Crim.Ct. 1973), to be that:
"defendant's reaffirmation on each welfare check of her obligation to report any change in circumstances which was the predicate for eligibility recertification by the Dept. of Social Services constituted the cashing of each check a separate larceny. That conclusion was made after trial and on failure of evidence of a common scheme or plan."
The court in Lofton itself noted that "for a series of acts to constitute a continuous crime, money or property must be obtained from the same source over a period of time with a single intent and design in execution of a common fraudulent scheme", Id. at 287, 340 N.Y.S.2d at 987 quoting People v. Cox, 286 N.Y. 137, 141, 36 N.E.2d 84, 86 (Ct.App. 1941).
The court in Lofton distinguished the case of People v. Kirk, 62 Misc.2d 1078, 310 N.Y.S.2d 155 (Rockland Cty Ct. 1969). In Kirk, the defendant, while applying for a position of Commissioner of Social Welfare in 1966, falsely represented to the Board of Supervisors that he possessed a Bachelor of Science degree. He was subsequently charged with the offense of false pretenses in 1969. The Court in Kirk noted the two year statute of limitations did not bar prosecution of the crime as "the termination date of the commission of a continuous crime and not the starting date governs the Statute of Limitations." Id. at 1085, 310 N.Y.S.2d at 164. The ending date fell within the two year statute of limitations and therefore the prosecution was not barred. The Court in Lofton distinguished Kirk *142 by pointing out that the defendant was granted his position on his initial misrepresentation. By assuming his duties, he intended that such misrepresentation continue. 73 Misc.2d at 287, 340 N.Y.S.2d at 988.
Kirk, however, did involve one scheme of conduct. Lofton did not. Moreover, Lofton is not generally followed even in its own jurisdiction. In People v. Bellamy, 94 Misc.2d 1028, 406 N.Y.S.2d 250 (Sup.Ct. 1978), the court declined to follow Lofton. In this case, the defendant had been on public assistance from July 1971 to March 1976. In order to qualify for continuation of the grants, she filed semi-annual recertification forms setting forth her income and assets pursuant to the Dept. of Social Services' requirements. The defendant concealed the fact that she had a contingent asset in the form of a personal injury suit in each report. In holding that there was not a new crime committed on the date of each recertification, but instead that the offense was continuous, the court noted that "the very essence of concealment is continuity for the period required to accomplish the desired result... The fact that there were successive acts in and of the concealment does not interrupt the continuity of the conduct which was directed to the accomplishment of a single purpose." Id. at 1031, 406 N.Y.S.2d at 252.
Applying the analysis of Bellamy to the case at bar, it is clear that defendant's action of concealment throughout the entire period was for the accomplishment of a specific purpose.
In New York, offenses may be aggregated. If an offense is viewed as a misdemeanor, the statute of limitations is two years. If an offense is viewed as a felony, the statute of limitations is 5 years. People v. Soto, 76 Misc.2d 491; 352 N.Y.S.2d 144, 147 (N.Y.C.Crim.Ct. 1974). People v. Soto, a welfare case, presented the question of whether there existed enough of a common plan or scheme to aggregate individual checks to grand larceny levels. The court, while noting that this could be done, stressed the principle so aptly stated in People v. Cox, 286 N.Y. at 145, 36 N.E.2d at 87, that the *143 takings were motivated by a single and sustained criminal impulse and in execution of a general fraudulent scheme. In determining what constitutes a single intent, the courts have held that "continued accretion, the adding of the products of the theft from the same source into a stockpile of stolen goods (is a good) indicium of a sustained purpose..." Soto, 76 Misc.2d at 494, 352 N.Y.S.2d at 149, quoting People v. Cox, 286 N.Y. at 145, 36 N.E.2d at 87. "In the cases at bar, it is uncontroverted that the defendants collected names from a single source, that the benefits received were used for their own needs and that the benefits derived from a source of predictable regularity." 76 Misc.2d at 496, 352 N.Y.S.2d at 149. The court, however, in Soto was not able to consider the specific factual situation, although it noted that "if it can be established at an evidentiary hearing or trial that the defendants concealed such operative facts with the expectancy of receiving undeserved benefits on a continuing basis, such would constitute the crime of larceny by false pretenses as a felony." Id. at 497, 352 N.Y.S.2d at 150.
People v. Peck, 93 Misc.2d 838, 403 N.Y.S.2d 624, (Sup.Ct. Crim.Term Queens Cty. 1978) also held that "amounts of welfare checks allegedly fraudulently received by defendants could be aggregated to support a felony indictment to which a five year statute of limitations would apply, if the checks were received under common scheme or plan." Id. at 838, 403 N.Y.S. 2d at 624. In reaching this conclusion the court distinguished Lofton by citing two cases, People v. Hunter, 34 N.Y.2d 432, 358 N.Y.S.2d 360, 315 N.E.2d 436 (Ct.App. 1974) and People v. Prim, 47 A.D.2d 409, 366 N.Y.S.2d 726 (App.Div. 1975).
In Hunter, although the Court of Appeals decided against a larceny finding because of insufficiency of evidence as to a lack of entitlement to the amount received, the court did note that the conduct with respect to the series of checks over the period recited in the indictment would constitute larceny. In Prim, the record supported the conviction of grand larceny in the second degree, in a welfare fraud case where the actual amount *144 was fraudulently received or stolen during a sixteen month period.
The court in Peck pointed out that
Implicit in Hunter and Prim is each court's acceptance of the validity of aggregating the sums of the checks to reach felony weight where the record establishes the amount of public assistance received in excess of the amount to which the recipient is entitled ... This court reads the Hunter decision as a disapproval of any notion that Lofton can be interpreted to prohibit, as a matter of law, the aggregating of individually cashed welfare checks to support a felony indictment ... 93 Misc.2d at 841, 403 N.Y.S.2d at 626-627.
It is clear that if the takings were done pursuant to a common scheme or plan, the separate payments are cumulated to raise the offense from a series of misdemeanors to the level of a single felony. This is not only the case in New York, but in other states as well.
In People v. Bailey, 55 Cal.2d 514, 11 Cal. Rptr. 543, 360 P.2d 39 (Sup.Ct. 1961), a conviction for grand theft of welfare benefits was affirmed with the court holding that where the defendant makes false representations and receives various sums from the victim, the receipts may be cumulated to constitute one offense of grand theft. In Dawson v. Superior Ct. of Alemeda Co., 138 Cal. App.2d 685, 292 P.2d 574 (Dist.Ct.App. 1956), the court held that a series of aid to needy children benefits which were paid to defendant on a monthly basis as a result of false representations which she made in her application for such relief were held to constitute grand theft and not merely a series of petty thefts. The court first noted that the distinctions between the various forms of larceny were eliminated in the new penal code and included under the term, "thefts." It was then stated that it was far more reasonable to consider "the whole plan rather than its component parts" in the case where a person intends, by his false representations, to initiate an act which will cause him to receive illegally various sums of money. Id. at 689, 292 P.2d at 577.
Although the case at bar is not concerned with the aggregating of a series of checks to raise an offense from a misdemeanor to that of a felony the reasoning, nevertheless, is the same. *145 The cases refer to a common scheme and, in effect, apply a continuing offense argument. This argument with relation to welfare was specifically addressed in Wisconsin and Hawaii.
In John v. State, 96 Wis.2d 183, 291 N.W.2d 502 (Sup.Ct. 1980), the Wisconsin Supreme Court found the continuing offense argument to be applicable to a statute making it fraudulent for one to continue to receive public assistance while intentionally failing to report a change of circumstances affecting eligibility. In its analysis of the Wisconsin statute 49.12(a) concerning reporting the court first noted the language of the statute which reads in pertinent part as follows:
If any person obtains ... assistance ... on the basis of facts stated to the authorities charged with the responsibility of furnishing assistance and fails to notify said authorities within ten days of any change in the facts as originally stated and continues to receive assistance ... such failure to notify shall be considered a fraud ...
The court found that "the continued receipt of public assistance is a method by which fraud is perpetrated and is an element of the offense ... The continued receipt of public assistance is not the same as the negotiation of the check. While negotiation of the check demonstrates continued receipt, it also reflects an intent to defraud. The negotiation of the check and the receipt of assistance differ in that the former is a means of proving the latter." 96 Wis.2d at 193, 291 N.W.2d at 507. The court further noted that the objective of one "failing to report changed conditions is to continue to receive overtime benefits for which the recipient is not entitled." Id. at 193, 291 N.W.2d at 507, construing Weber v. State, 59 Wis.2d 371, 384, 208 N.W.2d 396, 402 (Sup.Ct. 1973). This objective is not merely to receive one additional payment, but a series of increased payments over time. The court concluded that given both the nature of the offense and the statutory language, welfare fraud was indeed a continuing offense.
In State v. Martin, 62 Haw. 364, 616 P.2d 193 (Sup.Ct. 1980), the defendant, a mother with two children, applied for public assistance under the Aid for Families with Dependant Children *146 (AFDC) program in 1970. She gave birth to a third child in 1970 and married that child's father in September of 1971. She received assistance payments from 1975 until approximately January 1976. In order to continue receiving payment after her initial application, it was necessary for the defendant to file semi annual statements "of facts supporting continued eligibility for and to families" with children. She indicated on each statement that "the father of her youngest child was absent from the home, that she had no income and that she was not receiving any social security payments. Defendant also neglected to disclose the fact of her marriage at any relevant time to the Department of Social Services and Housing, although obligated to do so." Id. at 366-367, 616 P.2d at 196. The court concluded that the offense was a continuous one and stated that "we do not view each filing by defendant of a statement of facts supporting continued eligibility as necessarily constituting a new offense, since all statements were identical, representing that defendant was unmarried, unemployed, and not receiving social security benefits." Id. at 369, 616 P.2d at 197. Therefore, there was only one intention and plan manifested by the defendant.
The Court, noted that the Hawaii statute of limitations 701-108(4) provides as follows: "[a]n offense is committed ... if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct, or the defendant's complicity therein is terminated." Id. at 371, 616 P.2d at 198. The court further noted that "the statute of limitations begins to run on the day after the offense is committed. The language of the theft statute plainly manifests a legislative intent to prohibit continuing conduct since two elements of the pertinent crime, deception and the exercise of control over the property of another, involve conduct that can extend beyond isolated moments, particularly the former" Ibid.
Furthermore, the court was able to cite precedents which hold that "the date of the most recent act of a continuing offense governs the application of the statute of limitations." *147 Ibid. Therefore, it was determined that a three year statute of limitations did not preclude the defendant's prosecution under the theft statute and "where there is no clear legislative intent to limit prosecution to specific criminal statute, prosecution under general statute is not precluded." Id. at 364, 616 P.2d at 194. Thus, the defendant could be prosecuted under a theft statute instead of a welfare fraud statute.
In the case at bar factually the defendant committed a continuous offense. Other jurisdictions have provided for prosecution of continuous offenses in similar fact situations. However, an issue of statutory interpretation remains. In State v. Martin, the court was able to determine that the legislature intended to prohibit a continuing course of conduct. This was also the case in the statutory analysis of John v. State. It is therefore necessary to analyze the pertinent statutory provisions in New Jersey applicable to the facts to ascertain legislative direction, and ultimately determine whether a continuing course of conduct has indeed been prescribed.

A. THE NEW JERSEY CRIMINAL STATUTES OF LIMITATIONS
N.J.S.A. 2C:1-6 sets the time limitations for the prosecution of criminal offenses. This statute changed the earlier provisions of the N.J. statutes relative to time limitations. The earlier provisions were N.J.S.A. 2A:159-2 and N.J.S.A. 2A:169-10. In N.J.S.A. 2A:159-2, dealing with offenses not punishable with death, a person could not be prosecuted for an offense unless an indictment could be found within five years from the time of committing the offense. In N.J.S.A. 2A:169-10, which dealt with a statute of limitations relating to disorderly persons, the legislature provided that a person could not be prosecuted unless the complaint had been filed "within 1 year from the commission or discovery of the offense." Id. (emphasis supplied). The problem inherent in both of these provisions is the determination of the time of commission of the offense. This is *148 dealt within the present statute, N.J.S.A. 2C:1-6(c). It provides that, "An offense is committed either when every element occurs or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed." Id. While 2C has corrected some inherent problems of 2A, the current difficulty is determining whether a "legislative purpose to prohibit a continuing course of conduct" exists in the present factual situation. It is noted that the "Code, in effect, establishes a presumption against the finding that an offense is a continuous one." II N.J. Penal Code Commentary, Final Report of the N.J. Law Revision Commission 15 (1971). Nevertheless, it has also been noted that "to the extent that a given offense does in fact proscribe a continuing course of conduct, no violence is done to the statute of limitations. Since the conduct extends within the periods of limitation, it is subject to prosecution." Id. at 16.[2] Therefore, it is necessary to examine the statutes that Ms. Tyson has been charged with violating in order to determine if a continuing course of conduct has indeed been proscribed.

B. SPECIFIC STATUTORY CHARGES
The defendant was charged in the first two counts of the indictment with obtaining financial assistance by false representations and in the third count, with medicaid fraud. The first count specifically alleged welfare fraud, the second count alleged excessive receipt of food stamps, and the third alleged excessive medicaid assistance payments.
The specific statutes indicated in the first two counts are the same, N.J.S.A. Ann. 2A:111-3 and N.J.S.A. 2C:20-4. The third count charged a violation of N.J.S.A. 30:4D-17 and N.J.S.A. *149 2C:20-4. N.J.S.A. 2A:111-3 deals with the obtaining of medical treatment or financial assistance by false representations, N.J.S.A. 30:4D-17 is a penalty provision for the other wrongful obtaining of medical benefits, and N.J.S.A. 2C:20-4 deals with theft by deception. An analysis of these statutes will demonstrate their interrelationship.
First, it should be noted that while the defendant was only charged in the first two counts with the obtaining of financial assistance by false representations, under N.J.S.A. 2A:111-3, the statute additionally prohibits the obtaining of medical treatment by false representations. This is evidenced both by the heading of the statute and the language within it. The statute, with respect to both charges, used the term "false representation." Id. This refers to either false representations of the "ability to pay the usual and reasonable cost of medical or surgical treatment", or "false representations as to income or other financial resources", in the case of obtaining financial assistance. Id. The statute further uses the term, "concealing or failing to disclose a material fact which it is his duty to reveal" to refer to both the obtaining of medical, surgical treatment, and "financial or other assistance." Id. Therefore, the language in this statute clearly can be construed as applying to both medical and financial assistance fraud. The mere fact that the defendant is charged with violating only one portion of the statute does not preclude consideration of the entire statute for purposes of this analysis.
N.J.S.A. 30:4D-17 establishes a penalty for the wrongful obtaining of medical assistance payments. Section 17(b)-1 refers to the term "false statement or representation of a material fact" as N.J.S.A. 2A:111-3 did. Although N.J.S.A. 2A:111-3 used the term "false representation" and then added the term "concealing or or failing to disclose a material fact", the language is nearly identical. Furthermore, Section 17(b)-2 refers to causing to be made "any false statement, written or oral, of a material fact for use in determining rights to such benefit or payment under this act." Section 17(b)-3 uses the term conceals *150 or fails to disclose the occurrence of an event which affect his initial or continued right to any such benefit or payment ... with the word "continued" included in both subsections of 17(b)-3. Id. (emphasis supplied).
It is apparent that both N.J.S.A. 2A:111-3 and N.J.S.A. 30:4D-17 use the words "conceal or fail to disclose." Both refer to the misrepresentations of material facts or the concealment of such facts. The fact that one deals exclusively with medical assistance and that the other incorporates both the medical treatment and financial aspects into one statute is significant. By reading these statutes together, it can be concluded that the phrase "continued rights to payment" stated in N.J.S.A. 30:4D-17 can also be intended to refer to N.J.S.A. 2A:111-3. Use of the phrase, "initial or continued right to payment", therefore, indicates a recognition by the legislature, that the obtaining of medical treatment or financial assistance by false representations as well as medicaid fraud are indeed continuous offenses and this is one instance where the presumption against the finding of continuous offenses does not apply.
The defendant is also charged with violating N.J.S.A. 2C:20-4 in each count of the indictment. N.J.S.A. 2C:20-4 deals with theft by deception. It describes the obtaining of property of another by deception, including the failure to "correct a false impression ... previously created or reinforced." Id. This statute is the present codification of N.J.S.A. 2A:111-3.[3]N.J.S.A. 30:4D-17 has not been revised.
The consolidation of theft offenses provision in N.J.S.A. 2C:20-2b(4) clearly states that "Amounts involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons may be aggregated in determining the grade of the offense." Id. *151 (emphasis supplied). This has been interpreted to mean that "the scope of the actor's disregard of property rights cannot always be judged by looking only at the amount which he takes at a single moment from a single person ..." II N.J. Penal Code: Commentary, Final Report of the N.J. Law Revision Commission 221 (1971). The complete course of conduct must be considered and as the theft by deception and consolidation of theft offenses provisions are interrelated, there can indeed be a finding of the existence of a continuous offense with respect to N.J.S.A. 2C:20-4.
In the case at bar, the defendant received numerous monthly overpayments during the entire period from 1974 until 1983. The defendant, while obtaining and cashing each monthly check, and executing numerous reeligibility forms, breached her duty to report the change in circumstances during that time. This clearly indicates the pursuit of a common scheme. The supporting legislation evidences that insofar as the statutes are concerned in this fact pattern, a continuous offense concept was not barred by the legislature.
It is therefore, concluded that the defendant's course of conduct was a continuous one and the State is not barred, at this time, from prosecuting any part of its allegations by the statute of limitations. Accordingly, the defendant's motion to modify the indictment is denied.
NOTES
[1] The checks were received monthly. The "demand" argument surfaces via the applicants alleged false initial and renewal eligibility statements.
[2] A discussion concerning whether the statute of limitations can be characterized as either procedural or substantive is not necessary for purposes of this opinion.
[3] Due to the extended period of time covered by the indictment both statutes are operative.