STATE OF KANSAS, *Appellant,* v. STEPHEN M. FOX, *Appellee,*
and
No. 60,213

STATE OF KANSAS, *Appellant,* v. MARK D. LOWE, *Appellee.*

(749 P.2d 16)

Opinion filed January 15, 1988.

*Henry Otto III,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

*Lucille Marino,* assistant appellate defender, argued the cause, and *Benjamin C. Wood,* chief appellate defender, was with her on the brief for appellees.

The opinion of the court was delivered by

PRAGER, C.J.: This is an appeal by the State in two consolidated criminal cases where the defendants, Stephen M. Fox and Mark D. Lowe, were charged with felony unemployment fraud (K.S.A. 44-719[a]). The district court dismissed each case on the basis that each defendant should have been charged with multiple misdemeanor counts rather than a single felony count.

The facts in the case are undisputed and essentially are as follows: Stephen M. Fox was charged with felony unemployment fraud on April 15, 1986, in Pottawatomie County. The complaint stated:

"That on 12-20-84, 1-11-85, 1-20-85, 2-5-85, 2-13-85, 2-22-85, 3-2-85, 3-2-85, 3-31-85, and 4-7-85, the said Stephen M. Fox, within the above and

within named County and State, then and there being, did then and there contrary to the statutes of the State of Kansas unlawfully, willfully, and feloniously:

"COUNT 1: make false statements or representations, to-wit: *Continued Claim cards*, Form K-BEN 22 (2-83), for unemployment compensation benefits certified to be true and correct, knowing them to be false or knowingly fail to disclose a material fact, to obtain or increase any benefit or other payment under the employment security law, whereby the said Stephen M. Fox received benefits resulting in overpayments of $1,029.00, for which he is not entitled, either for himself or for any other person, in violation of K.S.A. 44-719(a), and if found guilty shall be guilty of theft and shall be punished in accordance with the provisions of K.S.A. 21-3701, or any amendments thereto; such offense being a class E felony, penalty sections: K.S.A. 1985 Supp. 21-4501(e) and K.S.A. 1985 Supp. 21-4503(1)(b)." (Emphasis supplied.)

Fox repeatedly failed to report his wages and thus received a number of overpayments. The felony charge resulted from the total overpayments received which were as follows:

| DATE | WAGES | BENEFITS | OVERPAYMENT |
| --- | --- | --- | --- |
| 12/15/84 | $226.10 | $126.00 | $  126.00 |
| 1/5/85 | 47.60 | 126.00 | 40.00 |
| 1/26/85 | 282.63 | 126.00 | 126.00 |
| 2/2/85 | 238.00 | 126.00 | 126.00 |
| 2/9/85 | 95.20 | 126.00 | 88.00 |
| 2/16/85 | 255.85 | 126.00 | 126.00 |
| 2/23/85 | 242.47 | 126.00 | 126.00 |
| 3/2/85 | 273.70 | 126.00 | 126.00 |
| 3/30/85 | 26.78 | 126.00 | 19.00 |
| 4/6/85 | 202.30 | 126.00 | 126.00 |
| TOTAL | | | $1,029.00 |

Mark D. Lowe was also charged with felony unemployment fraud in Pottawatomie County on August 6, 1986. The complaint stated:

"That on 05-08-85, 05-11-85, 5-19-85, 06-05-85, 06-08-85, and 06-15-85, the said Mark D. Lowe, within the above named County and State, then and there being, did then and there contrary to the statutes of the State of Kansas unlawfully, willfully, and feloniously:

"COUNT 1: make false statements or representations, to-wit: Continued Claim cards, Form K-BEN 22 (2-83), for unemployment compensation benefits certified to be true and correct, knowing them to be false or knowingly fail to disclose a material fact, to obtain or increase any benefits or other payment under the employment security law, amounting to overpayment in the sum of $484, for

which the said Mark D. Lowe is not entitled, either for himself or for any other person, all done with a singular larcenous intent, in violation of K.S.A. 44-719(a), and if found guilty shall be guilty of theft and shall be punished in accordance with the provisions of K.S.A. 21-3701, or any amendments thereto; such offense being a class E felony, penalty sections: K.S.A. 1985 Supp. 21-4501(e) and K.S.A. 1985 Supp. 21-4503(1)(b)."

The State based its claim against Lowe on overpayments made after Lowe failed to report employment income as follows:

| DATE | WAGES | BENEFITS | OVERPAYMENT |
|------|-------|----------|-------------|
| 5/4/85 | $ 51.30 | $130.00 | $ 44.00 |
| 5/11/85 | 376.20 | 130.00 | 130.00 |
| 5/18/85 | 256.50 | 130.00 | 130.00 |
| 6/1/85 | 17.10 | 130.00 | 10.00 |
| 6/8/85 | 47.03 | 130.00 | 40.00 |
| 6/15/85 | 458.82 | 130.00 | 130.00 |
| TOTAL | | | $484.00 |

Both defendants were arraigned and pled not guilty to the charges. On October 9, 1986, the two cases were consolidated for consideration of pretrial motions to dismiss. Judge Tracy D. Klinginsmith granted the motion in each case and allowed the State six days to amend each complaint to charge multiple misdemeanor counts rather than one felony count. The State declined to amend, and Judge Klinginsmith dismissed the complaints on November 6, 1986. The State appealed.

The State raises a single issue on the appeal: Whether the district court erred in ruling that the complaints are fatally defective in that the single larceny doctrine is not applicable to the underlying facts in the charges of unemployment fraud?

Both defendants are charged with violating K.S.A. 44-719(a), which provides:

"Any person who makes a false statement or representation knowing it to be false or knowingly fails to disclose a material fact, to obtain or increase any benefit or other payment under this act, either for such person or for any other person, shall be guilty of theft and shall be punished in accordance with the provisions of K.S.A. 21-3701 and amendments thereto."

K.S.A. 1986 Supp. 21-3701 establishes punishment based on the value of property stolen.

"Theft of property of the value of $150 or more is a class E felony. Theft of property of the value of less than $150 is a class A misdemeanor . . . ."

Each of the defendants became unemployed and entered into an arrangement with the Kansas Department of Human Resources for the receipt of unemployment benefits on a weekly basis. The defendants submitted K-BEN 22 (2-83) continued claim cards to the Department, each stating that he was not employed. Fox did so for 10 weeks out of 17, and Lowe did so for 6 weeks out of 7. Each card resulted in a benefit payment. However, no single payment to either defendant was $150 or more. The State based its felony charges on the total amounts received, concluding that the separate acts of submitting false K-BEN cards stemmed from a single larcenous intent by each defendant.

The single larceny doctrine is well established in Kansas. It was first discussed in *State v. Hall*, 111 Kan. 458, 207 Pac. 773 (1922). The defendant there was charged with grand larceny based on the theft of three items from two separate floors of a department store. The court stated:

" 'Where several articles are taken from the same owner at or about the same time by the same thief, the better practice, in spite of the fact that there are technically several takings, is to regard the takings as a single offense, and to indict and punish but once. This is clearly the case when the goods are taken at the same time by one act of taking. But it is equally true where the goods, although taken at substantially the same time, are taken independently.' (25 Cyc. 61.)

" 'But a series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provided the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme.' (*West v. Commonwealth*, 125 Va. 747, 754.)

". . . 'Each case must be determined upon its own special facts and circumstances. If, as it is said by some of the courts, the different asportations are prompted by one design, one purpose, one impulse, they are a single act, without regard to time.' (*Ex parte Jones*, 46 Mont. 122, 124-126.)" *State v. Hall*, 111 Kan. at 459.

The court concluded that "the stealing of several articles upon different floors of a department store during one visit of the defendant thereto may properly be charged as a single offense in one count of an information." 111 Kan. 458, Syl. ¶ 1.

That rule was expanded to the facts in *State v. Gordon*, 146 Kan. 41, 68 P.2d 635 (1937). There, a Topeka court clerk was convicted of felony embezzlement after he admitted taking $10

or $15 a day for 20 months, or a total of about $2,200. At the time, the necessary amount for a felony conviction was $20. The facts in *Gordon* are thus very similar to those in the case at bar.

The court, over a strong dissent, stated:

"Defendant may have conceived that separate takings of less than $20 each subjected him only to punishment for misdemeanors. But the evidence also warrants the conclusion that the series of takings was the result of plan or scheme and that each separate taking was but a step in the consummation of the whole scheme." *State v. Gordon*, 146 Kan. at 49.

The court also said, " 'The aggregate amount of a continuous series of conversions at different times and in different amounts may be proved to make up the amount charged.' " *State v. Gordon*, 146 Kan. at 46 (quoting 20 C.J., Embezzlement, p. 479.) Further, "If the practice was to take a series of amounts so that no one taking exceeded twenty dollars, it would be a fair inference from the evidence that the takings were the result of a scheme or plan." *State v. Gordon*, 146 Kan. at 48.

*Gordon* used the "single impulse" language of *Hall* to decide when a series of takings could be punished as one crime. Later cases continued the distinction. In *State v. Roberts*, 210 Kan. 786, 504 P.2d 242 (1972), *cert. denied* 414 U.S. 832 (1973), the court stated:

"When property is stolen by a succession of takings from the same owner and from the same place, each taking is a separate crime if it results from a separate impulse or intent. However, if it appears that a single incriminating impulse or intent is involved in the successive takings, they constitute a single larceny." Syl. ¶ 4.

In *Roberts*, the defendant had taken two power drills from a hardware store and 83 records from another store. Either drill alone was less than the felony limit ($50), and the records could have been taken at several different times, according to the defendant. The court concluded that it was up to the jury to decide whether there was a single impulse.

"The 'single larceny doctrine' permits a trier of fact to consider a series of larcenies, embezzlements, or other thefts to be the result of a single larcenous scheme. If the total amount stolen is valued above the statutory amount, the defendant can be found guilty of grand larceny." (The court then reviews *Hall* and *Gordon*.) pp. 790-91.

"Both of these cases speak of the 'single larceny doctrine' as a rule of evidence which will support a jury finding of grand larceny from evidence of a series of

petty thefts which the jury infers to be part of a single plan, scheme, or single larcenous impulse." p. 791.

These conclusions were restated and upheld in two later cases. In *State v. Green,* 213 Kan. 547, 549, 516 P.2d 926 (1973), the court stated:

"The single larceny doctrine is a rule of evidence, not a rule of law, which permits but does not require the trier of fact to consider a series of larcenies, embezzlements or other thefts to be the result of a single larcenous scheme. . . . To try defendant on a series of petty thefts would constitute harassment, double jeopardy, bring criminal justice administration to a standstill, and would be unjust to the victim of the thefts. The necessity of applying the doctrine for purposes of charging defendant with grand theft does not prove guilt of grand theft. It merely provides the basis for a jury's finding defendant's acts constituted grand theft rather than a series of petty thefts."

The *Green* court also pointed out that the defendant was entitled to have the jury instructed on any "separate impulse" defense.

In *State v. Stoops,* 4 Kan. App. 2d 130, 603 P.2d 221 (1979), the Kansas Court of Appeals discussed the doctrine and distinguished it. In *Stoops,* the defendant was charged with two counts of theft stemming from one act. He argued that the charges were multiplicitous but the court disagreed.

"If we were to adopt the single larceny doctrine, it seems to us the test to be applied to determine if there are separate offenses or only a single offense should be based on whether the evidence discloses one general intent to steal or distinct and separate intents. Each case necessarily would have to be decided on its own facts, and a defendant could be convicted of separate thefts only if the evidence showed the offenses to be separate and distinct and not committed pursuant to one intention, one impulse, or one plan.

"As set forth earlier in this opinion, the Supreme Court has allowed a series of misdemeanor thefts to support a grand larceny conviction under the 'single larceny doctrine' where the thefts were part of a single plan or scheme, or a single larcenous impulse. *State v. Roberts,* 210 Kan. at 790-91. It seems highly inconsistent to allow multiple misdemeanor thefts to be combined to reach a level of felony theft on one hand and on the other to convict a person of multiple thefts when that person intended only a single theft and had no reason to know the property belonged to more than one person.

"It is not necessary for us now to reject or adopt the single larceny doctrine, for the defendant here was properly convicted under either a single or multiple theory." pp. 139-40.

The basic principles of law established by these cases are essentially as follows:

(1) Separate acts of theft or embezzlement may constitute

felony theft if the acts were the result of one larcenous impulse or plan.

(2) Whether or not the separate acts were the result of one larcenous impulse or plan is a question of fact to be determined by the jury.

The question which we must determine is whether the single larceny doctrine may be applied in the two cases now before us involving unemployment fraud. This specific issue has not been determined by any Kansas appellate court. Each charge in this case is based upon K.S.A. 44-719. We believe that support for an application of the single larceny doctrine may be found in the legislative history of the unemployment fraud statute, K.S.A. 44-719. Prior to its amendment in 1973, the statute specifically provided that each "false statement or representation or failure to disclose a material fact shall constitute a separate offense." K.S.A. 44-719 (Corrick). The 1973 amendment (L. 1973, ch. 206, § 1) struck that wording, indicating a legislative intent that the single larceny plan may apply in cases involving violations of K.S.A. 44-719.

We have concluded that each case before us is a proper case for a jury determination as to whether the single larceny doctrine should be applicable so as to make a series of false representations a felony. We think it important to note that, in each case, the defendant had his own agreement or arrangement with the Kansas Department of Human Resources. The Department assigned to each defendant his own individual account number. The system is designed by statute so that unemployment compensation may be paid by continuing payments of benefits over a period of several weeks—provided the unemployed person remains unemployed and submits a signature benefit card reporting his wages earned to show his continuing eligibility for benefits. Although payments were made weekly to each defendant, they were paid pursuant to a single agreement or arrangement between the Department and each defendant. In each case there was involved a single victim, the State of Kansas.

We see no logical reason why the single larceny doctrine, if proved to the satisfaction of a jury, should not be applicable to these cases. The single larceny doctrine has been applied in other states in cases involving both welfare benefits and un-

employment compensation. In *People v. Soto,* 76 Misc. 2d 491, 352 N.Y.S.2d 144 (1974), it was held that, if it could be established that welfare recipients concealed facts with the expectancy of receiving undeserved benefits on a continuing basis, the individual checks received by the recipients may be aggregated to sustain a felony charge. The court stated that, in order to establish a felony, the prosecution had the burden of proving a common plan or scheme to the satisfaction of the jury. *Soto* was followed in *People v. Peck,* 93 Misc. 2d 838, 403 N.Y.S.2d 624 (1978).

In *People v. Bailey,* 55 Cal. 2d 514, 518, 11 Cal. Rptr. 543, 360 P.2d 39 (1961), it was held in a prosecution for grand theft by obtaining welfare payments that, "where as part of a single plan a defendant makes false representations and receives various sums from the victim the receipts may be cumulated to constitute but one offense of grand theft." The court noted that the test to be applied in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents. 55 Cal. 2d at 519.

For similiar cases, see *State v. Hatch,* 346 N.W.2d 268 (N.D. 1984) (unemployment compensation); and *State v. Wardlow,* 366 So. 2d 508 (Fla. Dist. App. 1979) (fraudulent receipt of food stamps).

The only jurisdiction found in our research which applies a different rule for unemployment benefits is the State of Michigan. In *People v. Robinson,* 97 Mich. App. 542, 296 N.W.2d 99 (1980), it was held that the charge of larceny over $100 was defective because defendant had been issued nine separate benefit checks, eight in the amount of $84 and one in the amount of $63, and there was no basis for aggregating the checks. The court stated that, since there was a two-week interval between each of defendant's nine larcenies and since each act necessitated an additional false statement, the nine larcenies did not satisfy the criterion for a single transaction so as to permit aggregation of the checks to permit the defendant to be charged with a felony. In the later case of *People v. Vargo,* 139 Mich. App. 573, 362 N.W.2d 840 (1984), the Michigan Court of Appeals held in a case involving welfare fraud that a series of payments could be aggregated where a series of payments was made on the basis of initial information furnished by the defendant.

On the basis of the rationale and the various authorities cited above, we have concluded that the single larceny doctrine may be presented by the prosecution in each case now before us. It is for the jury to determine, under proper instructions, whether the single larceny doctrine is applicable. In these cases, it is not possible to determine whether the single larceny doctrine is applicable because the trial judge dismissed the complaint prior to trial. The trial judge erred in ruling as a matter of law that the complaints were defective, because Kansas law holds that the question of whether there was a single larcenous impulse is a question of fact to be determined by the jury.

The proper way to charge a defendant under these circumstances is to have an information containing several counts. One count should charge a felony under the single larceny doctrine, and there should be alternative misdemeanor counts for each payment received in the event the jury rejects the single larceny theory. We hold that the trial court erred in dismissing the complaint against each of the defendants, Stephen M. Fox and Mark D. Lowe.

The defendants in their combined brief raise an issue that the complaints were fatally defective because each complaint failed to allege that the accused obtained control over the State's property with the intent to deprive the owner permanently of the possession, use, or benefit of said property. Although the defendants did not file a cross-appeal from any ruling in the trial court to raise the issue, we believe that question is covered by our decision in *State v. Micheaux*, 242 Kan. 192, 747 P.2d 784 (1987).

The judgments of the district court are reversed and the cases are remanded to the district court for further proceedings in accordance with the views expressed in this opinion.