570 A.2d 1042

STATE OF NEW JERSEY, PLAINTIFF, v. MARK H.
MELTZER, DEFENDANT.

Superior Court of New Jersey
Law Division Warren County

Decided October 20, 1989.

*William M. McCurley* for plaintiff.

*Joseph Lewis Nackson* for defendant.

DIANA, A.J.S.C.

The instant matter is before the court on motion by defendant Mark H. Meltzer requesting dismissal of two indictments. This pretrial criminal proceeding raises a novel issue entailing interpretation of the "bail jumping" statute (*N.J.S.A.* 2C:29–7) as it relates to the statutory period of time limiting prosecution (*N.J.S.A.* 2C:1–6) thereof. This court considered the following uncontroverted facts in resolving this and other issues presented by defendant's motion.

On November 13, 1978, defendant was stopped for speeding on Route 80 by a New Jersey state trooper. A search of defendant's rental vehicle disclosed several bags of suspected controlled dangerous substance ("CDS"), subsequently confirmed to be approximately 544 grams of marijuana. Additionally, a search of defendant's person revealed an address book containing the following entries: "(1) Joe Gaeta, gets lbs, for us. 305–931–7833; (2) Marc Palex, may front lbs. 305–032–3091; (3) Marty, get lrg. lbs., low price (Atlanta) 404–451–9152."

Defendant was arrested and charged with possession of CDS (*N.J.S.A.* 24:21–20[a–4]) and possession with intent to distribute same (*N.J.S.A.* 24:21–19[a–1]). At the time of his arrest, defendant proffered as his own, a Florida address. Bail was set at $10,000/10% cash terms, and thereafter, defendant posted bail and was released. On April 29, 1979, defendant was indicted by a Warren County grand jury on both of the aforementioned charges (indictment #I–250–J–78).

After several adjournments secured by defendant's counsel ("counsel"), the arraignment for those charges was set for September 14, 1979. On that date, counsel advised the Warren County prosecutor's office (the "State") that defendant was incarcerated in Iowa, and consequently would not appear. As a result, Superior Court Judge Bry–Nildsen revoked defendant's bail and issued a bench warrant for his arrest.

Shortly thereafter, the State obtained a Chicago, Illinois address for defendant from review of CDS Registry Act records. Correspondence mailed in late 1979 to both the Florida and Illinois addresses was returned "addressee unknown." By way of its moving papers, the State alludes to various discussions it engaged in with counsel, however, details no specific efforts it conducted to reclaim and prosecute defendant from this time until mid–1987.

On June 25, 1987, the State received a telephone call from counsel advising that defendant was residing somewhere in the Chicago area and wished to engage in a plea arrangement pertaining to his outstanding charges. Upon demand by the State, counsel refused to disclose any further information claiming attorney-client privilege. Consequently, on July 2, 1987, counsel was subpoenaed to appear before a grand jury for the purpose of obtaining disclosure of defendant's whereabouts.

The ensuing grand jury proceedings proved fruitless and defendant's exact whereabouts remained unknown. Shortly thereafter, the grand jury handed down indictment I–87–07–0188 charging defendant with "bail jumping" (*N.J.S.A.* 2C:29–

7); alleging that from September 14, 1979 to date, defendant had wrongfully failed to appear in answer to his outstanding drug charges.

In or about November 1988, defendant applied for a realtor's license in Florida. Pursuant to a voluntary disclosure on the license application concerning his New Jersey arrest record, he was apprehended and brought into custody on November 13, 1988. Defendant now moves before this court for dismissal of both indictments pursuant to *R.* 3:10–2.

As recently observed by the Appellate Division in *State v. Peterkin*, 226 *N.J.Super.* 25, 38, 543 *A.*2d 466 (App.Div.1988), "our Courts have long held that a dismissal of an indictment is a draconian remedy and should not be exercised except on the clearest and plainest ground." See *State v. New Jersey Trade Waste Assn.*, 96 *N.J.* 8, 18–19, 472 *A.*2d 1050 (1984) (quoting *State v. Weleck*, 10 *N.J.* 355, 364, 91 *A.*2d 751 (1952)). Judicial discretion to quash an indictment must not be exercised unless the indictment is "palpably defective." *State v. Russo*, 6 *N.J. Super.* 250, 254, 71 *A.*2d 142 (App.Div.1950), certif. den. 4 *N.J.* 456, 73 *A.*2d 212 (1950). "Similarly, if an indictment alleges all the essential facts of the crime, the charge is sufficiently stated and the indictment should not be dismissed unless its insufficiency is palpable'." *New Jersey Trade Waste Assn., supra,* 96 *N.J.* at 19, 472 *A.*2d 1050 (citing *State v. LaFera*, 35 *N.J.* 75, 81, 171 *A.*2d 311 (1961)).

In light of these legal benchmarks, the court initially focuses upon defendant's challenge to the drug charges indictment, which challenge apparently attacks the legal sufficiency thereof. As recognized by the New Jersey Supreme Court in *State v. Wein*, 80 *N.J.* 491, 404 *A.*2d 302 (1979), the standards for determining the sufficiency of an indictment are well-settled.

The fundamental inquiry is whether the indictment substantially misleads or misinforms the accused as to the crime charged. The key is intelligibility. The indictment must charge the defendant with the commission of a crime in reasonably understandable language setting forth all of the critical facts and

each of the essential elements which constitute the offense alleged. [at 498, 404 A.2d 302]

Accordingly, the ultimate purpose that an indictment must fulfill is to "enable a defendant to know that against which he must defend." *See State v. Spano*, 128 *N.J.Super.* 90, 92, 319 A.2d 230 (App.Div.1973), aff'd 64 *N.J.* 566, 319 A.2d 217 (1974).

■ Based upon the absence of statutory language to the contrary, counsel initially suggests that *N.J.S.A.* 24:21–19(a–1) must be interpreted to require, as an element of the respective offense, a showing of intent to distribute the confiscated CDS specifically in New Jersey. The absence of such an allegation against his client in the subject indictment, he argues, constitutes a fatal flaw warranting dismissal of said indictment. This court's review of the above-referenced penal statute and related case law does not support such a conclusion. The New Jersey Legislature did not intend to limit prosecution only to those alleged drug dealers found distributing, or intending to distribute, within New Jersey. Such an interpretation would render the respective penal statute wholly ineffectual and result in dispositions contrary to public policy. Accordingly, counsel's initial argument must be found to be without legal merit.

■ Counsel next argues that the State has failed to allege required proofs pertaining to the "possession" and "intent" elements of the respective drug charges. Such an omission, counsel asserts, constitutes a deficiency of the magnitude requiring dismissal of the subject indictment.

The arguments made by defendant's counsel attack the very underpinning of the State's case against his client, rather than any alleged intrinsic deficiency within the indictment itself. Furthermore, examination of the subject indictment reveals criminal charges against defendant in language strikingly similar to the respective statutes. In light of the foregoing legal authority, counsel would be hardpressed in pleading ignorance as to the charges against which he must defend. These arguments proffered by counsel, which hinge upon factual issues

for the jury to decide at trial, must fail at this pretrial juncture. Accordingly, the motion to dismiss indictment I–250–J–78 is denied.

■ The next challenge attacks indictment I–87–07–0188, charging defendant with "bail jumping," pursuant to *N.J.S.A.* 2C:29–7, which provides in relevant part:

A person set at liberty by court order, with or without bail, or who has been issued a summons, upon condition that he will subsequently appear at a specified time and place in connection with any offense or any violation of law punishable by a period of incarceration, commits an offense if, without lawful excuse, he fails to appear at that time and place. It is an affirmative defense for the defendant to prove, by a preponderance of evidence, that he did not knowingly fail to appear. The offense constitutes a crime of the third degree where the required appearance was to answer to a charge of a crime of the third degree or greater, or for disposition of any such charge and the actor took flight or went into hiding to avoid apprehension, trial or punishment.... This section does not apply to obligations to appear incident to release under suspended sentence or on probation or parole. Nothing herein shall interfere with or prevent the exercise by any court of this State of its power to punish for contempt.

Counsel contends that indictment I–87–07–0188 is barred by the applicable statute of limitations as prescribed by *N.J.S.A.* 2c:1–6. This statute mandates a five-year statutory period for prosecution of the subject bail-jumping offense, and provides in relevant part:

2c:1–6 Time limitations

(c.) An offense is committed either when every element occurs or, if a legislative purpose to prohibit a continuing course of conduct *plainly appears*, at the time when the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed.

. . . .

(f.) The limitations in this section shall not apply to any person fleeing from justice. [Emphasis supplied]

Defendant's counsel initially argues that bail jumping was not conceived as a continuous offense, within the meaning of *N.J.S.A.* 2C:1–6(c), and therefore, the time period for prosecution of the instant offense ran from defendant's non-appearance at the arraignment scheduled on September 14, 1979, and expired five years hence on or about September 14, 1984.

Consequently, counsel concludes that the instant indictment is palpably defective as it was not brought within the statutory period for prosecution thereof.

In support of his argument, counsel focuses on the words "commits an offense if, without lawful excuse, he fails to appear *at that time and place.*" *N.J.S.A.* 2C:29–7; emphasis supplied. He argues it is significant that nowhere in this statute does the New Jersey Legislature plainly evidence an intent to codify bail jumping as a continuous offense. Accordingly, it is asserted, that said statute fails to meet the "plainly appears" standard for a finding of continuous conduct as mandated by *N.J.S.A.* 2C:1–6(c).

Counsel also cites the New Jersey Penal Code: Commentary, Final Report of the New Jersey Criminal Law Revision Commission (1970), which states that "the code, in effect, establishes a presumption against the fact that an offense is a continuous one." *Id.* at 15. Further, counsel analogizes the instant matter to that of *Toussie v. U.S.,* 397 *U.S.* 112, 90 *S.Ct.* 858, 25 *L.Ed.*2d 156 (1970), decided by the U.S. Supreme Court.

The dispute in *Toussie* involved a failure by that defendant to register for the draft as mandated by the Universal Military Training and Service Act. 50 *U.S.C.A.* 453 (later amended by the Military Selective Service Act of 1967, 81 *Stat.* 100). Defendant Toussie was indicted approximately eight years after he was obliged to so register. The instant matter is somewhat analogous to *Toussie* in that each involves a continuing act of omission by defendant followed by the issuance of an indictment returned after the expiration of a statute of limitations. Also of note to this analogy is the regulatory provision that referred to draft registration as a "continuing duty."

In *Toussie,* despite the regulatory provision that draft registration was a "continuing duty," the United States Supreme Court held that failure to register for the draft was *not* a continuous offense because it was not explicitly made so by the selective service statute. The Court concluded that an offense

is not a continuing offense "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that (Congress) must assuredly have intended that it be treated as a continuous one." 397 *U.S.* at 115, 90 *S.Ct.* at 860.

In response to counsel's argument, the State refers to *Corpus Juris Secundum* which states that a continuing offense exists where there is a continuing duty of the accused to do some act. 22 *C.J.S.* at 590. The State argues that defendant, as a fugitive from justice, was under a continuing obligation to turn himself in to the proper authorities. Furthermore, the State contends that defendant's non-appearance on the date set forth is separately punishable as contempt of court and thus, by its own terms, no provision within *N.J.S.A.* 2c:29–7 may "interfere with or prevent the exercise by any court of this State of its power to punish for contempt."

We have found no New Jersey case interpreting the crime of bail jumping, either as a continuous or discrete offense. Therefore this court must decide for the first time whether a legislative purpose to prohibit a continuing course of conduct "plainly appears" with respect to bail jumping.

There are at least two plausible interpretations of the statute. One interpretation would limit the institution of prosecution for the instant bail-jumping offense to the statutory period of five years following the initial failure to appear. The other could effectively extend the statutory period for prosecution of the subject, and all bail-jumping offenses *ad infinitum*. Based upon basic principles of judicial restraint concerning statutory construction, and mindful of the potential consequences attendant to the latter interpretation, this court concludes that it is not "plainly clear" the New Jersey Legislature intended to proscribe bail jumping as a continuous offense.

In so concluding, it must be emphasized that this decision does not diminish the gravity of consequences associated with the bail-jumping offense. It simply places the onus upon the

State to prosecute said offense on a reasonably expeditious basis. Such conclusion will not unduly burden, nor impede effective enforcement of, the subject penal statute. Additionally, the State has not posed, nor does this court know of any compelling reasons which, if accepted, establish the necessity for sanctioning unseasonable prosecution of bail jumping. To conclude otherwise, would contravene the critical purpose of any statute of limitation; namely "to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie, supra*, 397 *U.S.* at 115–116, 90 *S.Ct.* at 860–861.

Accordingly, pursuant to *N.J.S.A.* 2C:1–6, the applicable five-year statute of limitations effectively bars prosecution by the State of indictment I–87–07–0188, provided that no exceptions to application of this statutory period pertain to defendant in this matter.

 In light of the foregoing, the remaining query before this court is the potential effect to the instant matter of *N.J.S.A.* 2C:1–6(f) which states "the limitations in this section shall not apply to any person fleeing from justice." Defendant's counsel argues that his client was not fleeing from justice as contemplated by this statutory provision, and therefore the five-year period for prosecution had expired prior to issuance of the subject indictment. In support thereof, various proofs are submitted which allegedly establish defendant's lack of intent to elude prosecution of the New Jersey charges. The State counters by asserting such proofs create factual questions not properly cognizable in a pretrial proceeding.

Well-settled law supports the State's position that whether a defendant did "flee from justice," thereby tolling the applicable statute of limitations, is a question of fact to be decided by the jury at trial. *State v. Rosen*, 52 *N.J.Super.* 210, 214, 145 *A.2d* 158 (Law Div.1958) (citing *State v. Estrada*, 35 *N.J.Super.* 459,

114 *A*.2d 323 (Cty.Ct.1955)). *See also State v. Greenberg*, 16 *N.J.* 568, 578, 109 *A*.2d 669 (1954). Accordingly, defendant is not entitled to a dismissal of indictment I–87–07–0188 at this juncture.