649 A.2d 1379

STATE OF NEW JERSEY, PLAINTIFF,
v. JEFFREY KLINE, DEFENDANT.

Superior Court of New Jersey
Law Division Monmouth County

Decided July 22, 1994.

*Eric Witiw* for the State (*John Kaye*, Monmouth County Prosecutor).

*Herminia R. Moreira* for defendant (*Auerbach & Cox*, attorneys).

LOCASCIO, J.S.C.

On April 14, 1989, defendant was convicted of theft and sentenced to a four-year prison term. On December 7, 1989, defendant was released from state prison into the Intensive Supervision Program (ISP). On August 16, 1990, defendant's wife received a note which indicated defendant was leaving the area "for the best of all involved." On August 17, 1990, defendant departed Newark Airport, with a one-way ticket, bound for Denver, Colorado. After being taken into custody in Las Vegas, Nevada on March 31, 1993, defendant was indicted by a Monmouth County Grand Jury for absconding from parole, in violation of *N.J.S.A.* 2C:29–5. Defendant now moves to dismiss the indictment, contending that he is

charged with an offense which was not a crime on the day the alleged absconding occurred.

Prior to the inclusion of ISP into the term "parole," the New Jersey Supreme Court specifically held that absconding from ISP was not a crime until the Legislature made that conduct a crime. *State v. Clay*, 230 *N.J.Super.* 509, 553 *A.*2d 1356 (App.Div.1989), *aff'd o.b.*, 118 *N.J.* 251, 571 *A.*2d 295 (1990). *N.J.S.A.* 2C:29-5, which became effective on February 25, 1991, reads, in pertinent part:

b. Absconding from parole. A person subject to parole commits a crime of the third degree if the person goes into hiding or leaves the State with a purpose of avoiding supervision. As used in this subsection, "parole" includes participation in the Intensive Supervision Program (ISP)....

Defendant claims that a conviction under *N.J.S.A.* 2C:29-5 would violate the federal and state prohibition against *ex post facto* laws because when he allegedly absconded from ISP, it was not a crime. Although the indictment alleges the absconding occurred on or about August 17, 1990, when defendant left New Jersey, at oral argument the State conceded there could be no offense prior to the effective date of the statute and therefore has moved to amend the indictment to allege that the offense occurred on or about February 25, 1991. Because such an amendment would conform to the evidence and the law, without prejudice or surprise to defendant, the State's motion is hereby granted. *See R.* 3:7-4; *State v. Bowens*, 219 *N.J.Super.* 290, 294, 530 *A.*2d 338 (App.Div. 1987).

A motion to dismiss an indictment is addressed to the sound discretion of the trial court. *State v. New Jersey Trade Waste Ass'n*, 96 *N.J.* 8, 18–19, 472 *A.*2d 1050 (1984); *State v. Weleck*, 10 *N.J.* 355, 364, 91 *A.*2d 751 (1952); *State v. Bennett*, 194 *N.J.Super.* 231, 234, 476 *A.*2d 833 (App.Div.1984). Such discretion should not be exercised except on "the clearest and plainest ground." *State v. Weleck, supra*, 10 *N.J.* at 364, 91 *A.*2d 751.

A grand jury may return an indictment if it is supported by a *prima facie* showing that the accused has committed a crime.

*State v. Wilson,* 183 *N.J.Super.* 86, 94, 443 *A.*2d 252 (Law Div. 1981). However, even though an indictment is presumed valid, "a defendant with substantial grounds for having an indictment dismissed should not be compelled to go to trial to prove the insufficiency." *State v. Hill,* 166 *N.J.Super.* 224, 229, 399 *A.*2d 667 (Law Div.1978), *rev'd on other grounds,* 170 *N.J.Super.* 485, 406 *A.*2d 1334 (App.Div.1979), quoting *State v. Graziani,* 60 *N.J.Super.* 1, 22, 158 *A.*2d 375 (App.Div.1959), *aff'd,* 31 *N.J.* 538, 158 *A.*2d 330 (1960).

The Federal Constitution and New Jersey Constitution prohibit the Legislature from enacting *ex post facto* laws. *U.S. Const.,* art. I, § 10, cl. 1; *N.J. Const.* (1947), art. IV, § 7, par. 3. Although the phrase *"ex post facto"* literally means "after the fact," it has long been recognized that the constitutional prohibitions against *ex post facto* laws apply only to penal statutes which disadvantage the offender. *Calder v. Bull,* 3 *Dall.* 386, 390–392, 1 *L.Ed.* 648 (1798). *See Collins v. Youngblood,* 497 U.S. 37, 40, 110 *S.Ct.* 2715, 2718, 111 *L.Ed.*2d 30, 33 (1990); *Miller v. Florida,* 482 *U.S.* 423, 430, 107 *S.Ct.* 2446, 2451, 96 *L.Ed.*2d 351, 359–60 (1987). The purpose of *ex post facto* clauses is to prohibit the enactment of any law that imposes a punishment for an act that was not punishable at the time it was committed, or that imposes additional punishment to that then prescribed. *Cummings v. Missouri,* 71 *U.S.* (4 Wall.) 277, 325–26, 18 *L.Ed.* 356 (1867). This prohibition assures that legislative acts "give fair warning of their effect and permit individuals to rely upon their meaning until explicitly changed." *State v. Bey,* 129 *N.J.* 557, 618, 610 *A.*2d 814 (1992), citing *Weaver v. Graham,* 450 *U.S.* 24, 28–29, 101 *S.Ct.* 960, 964, 67 *L.Ed.*2d 17, 21 (1981). *Calder v. Bull, supra,* 3 *Dall.* at 390, enumerated the various types of *ex post facto* laws:

1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime,* or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the

time of the commission of the offence [sic], *in order to convict the offender."*
*[Ibid.]*

An *ex post facto* law: (1) must be retroactive, that is, it must apply to events occurring before its enactment; and (2) must disadvantage the offender affected by it. *Weaver v. Graham, supra,* 450 *U.S.* at 29, 101 *S.Ct.* at 965, 67 *L.Ed.*2d at 22. "The critical question is whether the law changes the legal consequences of acts completed before its effective date." *Id.* at 31, 101 *S.Ct.* at 965, 67 *L.Ed.*2d at 23. Therefore, in the present case, the issue is whether absconding from ISP is a continuous offense, *i.e.* whether defendant's absconding was completed before February 25, 1991, or whether it continued thereafter.

Because of the presumption against a determination of an offense as being "continuous," *State v. Meltzer,* 239 *N.J.Super.* 110, 117–118, 570 *A.*2d 1042 (Law Div.1989), it is necessary to analyze the pertinent cases, statutes and court rules to determine if absconding from ISP is a continuous offense. In *Toussie v. U.S.,* 397 *U.S.* 112, 115, 90 *S.Ct.* 858, 860, 25 *L.Ed.*2d 156, 161 (1970), the Court concluded that an offense is not a continuing offense "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [Congress] must assuredly have intended that it be treated as a continuous one."

Absconding from parole in violation of *N.J.S.A.* 2C:29–5b does not, on its face, appear to meet the first prong of the *Toussie* test because the statute does not explicitly state that the offense is continuous. However, the State maintains that the legislative and judicial backdrop establishing ISP indicates that absconding from such a program is to be treated as a continuous offense. An indispensable element of a continuous offense is the omission to perform a duty. *See State v. Tyson,* 200 *N.J.Super.* 137, 490 *A.*2d 386 (Law Div.1984). ISP was added to *R.* 3:21–10(e) by an amendment effective September 1983, in implementation of *R.* 3:21–10(b)(5), as a post-sentence, post-incarceration program of judicial intervention and diversion back to the community. Pressler, *Current N.J. Court Rules,* comment 5 on R. 3:21–10(e) (1994);

See also, State v. Clay, 230 N.J.Super. 509, 512, 553 A.2d 1356 (1989). An important feature of the program includes a mandatory minimum of five contacts per week per participant. State v. Clay, supra, 230 N.J.Super. at 514, 553 A.2d 1356.

As a result of the Legislature's amendment of N.J.S.A. 2C:29–5 to include ISP in "absconding from parole," the State argues that one may be guilty of the offense of absconding if he acts to frustrate his supervision or omits to perform a required act under his supervision. The State notes that the word "abscond" is defined in Black's Law Dictionary as: "To go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid legal process.... [t]o hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process." Black's Law Dictionary 8 (6th ed. 1990). Therefore, the State contends that the defendant, by remaining out of the state and failing to fulfill the conditions imposed upon him, committed an offense which the legislature intended to make a continuous crime.

While the legislative intent behind the use of the word "abscond" may be ambiguous, the intent behind N.J.S.A. 2C:1–5a is unequivocal: "[N]o conduct constitutes an offense unless the offense is defined by this code or another statute of this state." Further, the courts of this state have repeatedly held that a crime, as defined by our criminal code, must be strictly construed. State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987); In re Suspension of DeMarco, 83 N.J. 25, 36, 414 A.2d 1339 (1980); State v. Carbone, 38 N.J. 19, 24, 183 A.2d 1 (1962). Coincidentally, a example of the strict scrutiny with which a criminal statute is construed is State v. Clay, supra, 230 N.J.Super. at 522–25, 553 A.2d 1356, where the court emphasized that:

> In light of the traditional doctrine that courts must strictly construe criminal statutes, we cannot strain to criminalize by judicial ukase or condone administrative criminalization of defendant's count in failing to comply with ISP.... Penal laws cannot be extended by implication or intendment. *Where more than one reasonable interpretation may be made, or where the language is ambiguous—and the ambiguity is not manufactured by the defendant—the construction must be drawn against the state.* (Emphasis added.)

The word "abscond" has been interpreted by courts of this state and other jurisdictions to connote active, intentional conduct. *See Britton v. Howard Savings Bank*, 727 *F*.2d 315, 318 (3rd Cir.1984) (an "absconding debtor" is one who, "with intent to defeat or delay the demands of his creditors, conceals or withdraws himself from his usual place of residence beyond the reach of process."); *McQueeny v. J.W. Fergusson & Sons, Inc.*, 527 *F.Supp.* 728, 731 (D.C.N.J.1981); *State v. Argon*, 91 *Misc.*2d 1091, 399 *N.Y.S.*2d 383, 292 (App.Div.1977) (all of the dictionary definitions of "abscond" indicate that to abscond means to depart clandestinely, secretly, or surreptitiously.); *Snyder v. St. Paul Mercury Indem. Co.*, 191 *S.W.*2d 107, 110 (Tex.Civ.App.1945) ("abscond" [is] construed to mean "to hide oneself; to retire from the public view . . . to go away hurriedly and secretly.") Webster defines abscond as: "withdraw, flee; to depart secretly; withdraw and hide oneself; to evade the legal process of a court by hiding within or secretly leaving its jurisdiction." *Webster's New International Dictionary* 6 (3rd ed. 1990).

*N.J.S.A.* 2C:29-5 does not meet the first prong of the *Toussie* test because although the Legislature had the right and opportunity to explicitly state that absconding from parole is deemed a continuing offense, the statute does not unambiguously do so. Since this court finds that the State has failed to overcome the presumption against a determination of an offense as being continuous, *State v. Meltzer, supra*, 239 *N.J.Super.* at 117–118, 570 *A.*2d 1042, *N.J.S.A.* 2C:29-5 does not meet the second prong of the *Toussie* test. Although defendant's absence from New Jersey constituted a continuous *violation of parole*, since he left New Jersey prior to the Legislature's incorporating ISP into the statute prohibiting *absconding* from parole, to make defendant's act *criminal* would apply it to an event occurring before its enactment in such a way as to disadvantage defendant. Thus, it is an *ex post facto* law, since it would change "the legal consequences of acts completed before its effective date." *Weaver v. Graham, supra*, 450 *U.S.* at 29, 31, 101 *S.Ct.* at 964–65, 67 *L.Ed.*2d at 22–23.

Defendant, therefore, cannot be charged with *criminally* abandoning New Jersey when, at the time he left, it was not a crime. A strict and plain interpretation of the absconding statute, *N.J.S.A.* 2C:29–5b, precludes its application to this defendant; any other interpretation of the statute would violate defendant's due process by subjecting him to an *ex post facto* application of the law.

For the foregoing reasons, defendant's motion to dismiss the indictment is granted.