963 A.2d 1254 (2009)
405 N.J. Super. 266
STATE of New Jersey, Plaintiff-Appellant,
v.
Lawrence S. COVEN, Defendant-Respondent.
No. A-5846-07T4.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 2009.
Decided February 11, 2009.
Phillip Leahy, Deputy Attorney General, argued the cause for appellant (Anne Milgram, Attorney General, attorney; Mr. Leahy, of counsel and on the brief).
*1255 Michael J. Rogers, Somerville, argued the cause for respondent (McDonald & Rogers, LLC, attorneys; Mr. Rogers, of counsel and on the brief).
Before Judges LISA, REISNER and ALVAREZ.
The opinion of the court was delivered by
LISA, P.J.A.D.
By leave granted, the State appeals from an order dismissing four counts[1] in an indictment charging second-degree misapplication of entrusted property, in violation of N.J.S.A. 2C:21-15. These charges arose out of four mortgage refinance closings, for which defendant, then a licensed New Jersey attorney, served as the settlement agent. In each instance, defendant received loan proceeds from the new lender, and had an obligation to immediately pay off the mortgage being refinanced. Defendant did not pay off the original mortgages, but instead appropriated the proceeds to his own use. He continued making monthly payments to the original mortgage holders in order to conceal his misapplication of the funds. In time, in each case, the homeowners discovered defendant's misdeeds, and defendant eventually paid off in full each of the mortgages.
The indictment was returned on November 30, 2007, which was more than five years from each of the four settlements, but less than five years from when each of the old mortgages was paid off. Judge Edward M. Coleman granted defendant's motion to dismiss the four counts because the State failed to commence the prosecution within the five-year limitation period. The judge rejected the State's argument that misapplication of entrusted property is a continuing course of conduct offense that was not complete until the original mortgages were paid off. We agree with Judge Coleman and affirm.
These were the events forming the subject matter of the first count. Homeowners Mark and Susan Diana were refinancing their home in Watchung. Their home was encumbered by a mortgage due to United Trust Mortgage (United Trust) with a balance of $246,562.21. They arranged for a new mortgage with Chase Manhattan Mortgage (Chase) in the amount of $375,000. The closing took place on September 6, 2001. On September 11, 2001, after the passage of three business days under the homeowners' right of rescision, plus two weekend days, Chase wired into defendant's account the net mortgage proceeds, after withholding certain closing costs, of $372,273. Defendant was obligated to immediately pay off the United Trust mortgage. But he did not do so. Instead, he made monthly payments as they became due to United Trust, keeping that mortgage current in order to conceal his actions. Defendant used the mortgage proceeds for his own debts and expenses.
The Dianas did not know that the United Trust mortgage had not been paid off at the time of closing. They remained unaware until September 2002, when Mark Diana received a new coupon book from United Trust, which alerted him that something was wrong. He called defendant in October 2002. Defendant told him he would "try to coordinate a resolution with the bank." Sometime around October 10, 2002, the Dianas received a phone message from defendant that the situation had been "resolved." On December 27, 2002, they received confirmation from United Trust that the mortgage was paid *1256 in full. Records established that the mortgage was paid off on December 11, 2002.
We need not recount in detail the events involved in the other three transactions. They all followed a similar pattern. It is sufficient to set forth only the applicable dates and dollar amounts.
In count two, the homeowners obtained a new mortgage for $227,000, by which they would refinance their home and pay off their existing $225,645 mortgage. Settlement was held on October 31, 2001. On November 5, 2001, the new lender wired $227,416.39 into defendant's account. After the homeowners discovered that their original mortgage had not been paid off and contacted defendant, he eventually paid the original mortgage on November 13, 2003.
In count three, the homeowners borrowed $96,400 to refinance and pay off their existing $93,966.21 mortgage. Settlement was held on January 31, 2002. On February 5, 2002, the new lender wired into defendant's account $95,708.31. After being caught, defendant eventually paid off the original mortgage on April 22, 2004.
The fourth settlement was also held on January 31, 2002. The homeowners borrowed $105,600, of which $102,857.97 was to be paid to their original mortgage holder to satisfy that mortgage. On January 31, 2002, the new lender wired $102,834.73 into defendant's account. In this case, unlike the others, defendant was not obligated to immediately pay off the other mortgage, but was required by law to hold the funds for three business days (plus any intervening weekends) and then pay it off. However, defendant again failed to do so and made monthly mortgage payments until he was caught. He eventually paid off the original mortgage on April 6, 2004.
It appears undisputed that the funds in each case were wired into defendant's attorney trust account. See R. 1:21-6. The record does not disclose whether defendant ever transferred any or all of the funds out of the trust account into a personal account. The State did not present information in that regard to the grand jury. We can conceive of no reason why such information could not have been ascertained through investigation by examining defendant's bank records. Nevertheless, as we will explain, whether or not defendant removed the funds from his trust account is not dispositive in the circumstances of this case.
Defendant was disbarred on April 2, 2002. In re Coven, 171 N.J. 143, 792 A.2d 1241 (2002). The disbarment order restrained disbursement of funds then existing in defendant's accounts maintained pursuant to Rule 1:21-6 and directed transfer of those funds into the Superior Court Trust Fund pending further order of the Court. Id. at 143-44, 792 A.2d 1241. It is thus clear that defendant's defalcations were known to the homeowners within the timeframes we have set forth, and were a matter of public record by the time of defendant's disbarment. Nevertheless, the State did not present this case to the grand jury until November 30, 2007, on which date the indictment was returned.
Against this backdrop, we analyze whether the State commenced the prosecution within the applicable limitation period. N.J.S.A. 2C:21-15, entitled "Misapplication of entrusted property and property of government or financial institution," provides in relevant part:
A person commits a crime if he applies or disposes of property that has been entrusted to him as a fiduciary, or property belonging to or required to be withheld for the benefit of the government or of a financial institution in a manner which he knows is unlawful and involves a substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted *1257 whether or not the actor has derived a pecuniary benefit. "Fiduciary" includes trustee, guardian, executor, administrator, receiver and any person carrying on fiduciary functions on behalf of a corporation or other organization which is a fiduciary.
If the benefit derived from a violation of this section is $75,000.00 or more, the offender is guilty of a crime of the second degree.
To obtain a conviction under the statute, the State must prove the following five elements beyond a reasonable doubt:
1. Defendant knowingly applied or disposed of property;
2. The property at issue was either (a) entrusted to defendant as a fiduciary, or (b) belonging to or required to be withheld for the benefit of the government or a financial institution;[2]
3. Defendant's application or disposition of the property was unlawful;
4. Defendant's application or disposition involved substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted;
5. Defendant knew both that his conduct was unlawful and that it involved substantial risk of loss or detriment.
[Model Jury Charge (Criminal), "Misapplication of Entrusted Property (Fiduciary Duty)" (2008); Model Jury Charge (Criminal), "Misapplication of Entrusted Property of Government or Financial Institution" (2008).]
The "essential elements" of the offense are that "the defendant knowingly misused entrusted property." State v. Manthey, 295 N.J.Super. 26, 31, 684 A.2d 517 (App. Div.1996) (quoting Matter of Iulo, 115 N.J. 498, 502, 559 A.2d 1349 (1989)). In Iulo, the Court noted that the essential elements of N.J.S.A. 2C:21-15 track those of a disbarment proceeding under In re Wilson, 81 N.J. 451, 409 A.2d 1153 (1979):
[The prohibited conduct] consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking. It makes no difference whether ... in fact he ultimately did reimburse the client.... [I]t is the mere act of taking your client's money knowing that you have no authority to do so that requires disbarment.
[Iulo, supra, 115 N.J. at 502, 559 A.2d 1349 (quoting In re Noonan, 102 N.J. 157, 160, 506 A.2d 722 (1986)).]
The statutory prohibition exists only within the context of property received by the actor from another in which a third person has a right or for whose benefit the actor received it. State v. Damiano, 322 N.J.Super. 22, 44, 730 A.2d 376 (App.Div.1999), certif. denied, 163 N.J. 396, 749 A.2d 369 (2000). It does not encompass a relationship strictly between a debtor and creditor with no intervening rights of any third persons. Ibid. The statute covers persons entrusted with funds required to be paid to a financial institution. Id. at 43, 730 A.2d 376.
The statute of limitations for this offense is five years. N.J.S.A. 2C:1-6b(1). Prosecution is commenced when an indictment is returned. N.J.S.A. 2C:1-6d. "An offense is committed either when every element occurs or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity *1258 therein is terminated." N.J.S.A. 2C:1-6c. The "plainly appears" standard "in effect, establishes a presumption against the fact that an offense is a continuous one." State v. Meltzer, 239 N.J.Super. 110, 116, 570 A.2d 1042 (Law Div.1989) (quoting New Jersey Penal Code: Commentary, Final Report of the New Jersey Criminal Law Revision Commission (1970)).
The State points to nothing in the legislative history underlying N.J.S.A. 2C:21-15 to support its argument that the Legislature plainly intended that the crime be one of a continuing course of conduct. The State relies on the nature of the crime itself, as defined by its terms. The State argues that determination of the limitation period for this offense "necessitate[s] evaluation of a period of time, not merely the exact moment at which defendant [mis]applies the property." The parties do not dispute that, under the statutory element requiring that the property is put at substantial risk of loss or detriment to the owner or person for whose benefit it was entrusted, the risk may increase or decrease and continues to exist over a period of time. But, according to the State, because the risk of loss continues to exist every day the property remains misapplied, this "leads to a murkier determination of when the violation of the statute has been completed, as compared to a crime whose elements are not based upon the result of the conduct."
Judge Coleman found this argument unpersuasive, and so do we. The moment the property is put at substantial risk of loss or detriment to the owner or person for whose benefit it was entrusted, that element is satisfied.
In a somewhat analogous context, we have considered the statute of limitations as it applies to the crime of misapplication of entrusted property. State v. Modell, 260 N.J.Super. 227, 251-53, 615 A.2d 1264 (App.Div.1992), certif. denied, 133 N.J. 432, 627 A.2d 1138 (1993). With respect to one count in that case, the defendant, an insurance agent, received funds entrusted to him for the purchase of a retirement plan. Id. at 234-35, 615 A.2d 1264. He did not purchase the retirement plan but misapplied the funds. Id. at 234-36, 615 A.2d 1264. The funds had been transmitted to the defendant by a check on June 12, 1984. Id. at 252, 615 A.2d 1264. He deposited the check into his personal checking account on August 13, 1984. Ibid. In 1986, when the client confronted the defendant about the defalcation, the defendant repaid the full amount advanced plus interest. Id. at 235-36, 615 A.2d 1264. The indictment was returned on August 2, 1989. Id. at 251, 615 A.2d 1264.
The defendant argued that the statute of limitations had run and, specifically, that offenses under N.J.S.A. 2C:21-15 "are not continuing." Id. at 233, 615 A.2d 1264. The defendant argued that the five-year limitation period expired before the indictment was returned on August 2, 1989 because it began to run when the check was issued to him on June 12, 1984. Id. at 251, 615 A.2d 1264. The State argued that the crime was not complete until August 13, 1984, and therefore, the indictment was returned within the limitation period. Ibid.
We noted the defendant's obligation to remit the money for its intended purpose "as soon as possible," but agreed with the trial judge that we should not "`speculate as to [the defendant's] intent from the time he received the check to the time he deposited it and whether his intent was manifested and enforced.'" Id. at 253, 615 A.2d 1264. We held that the limitation period began to run on the date the defendant began treating the funds as his own. Ibid. We stated:
It was on August 13, 1984  the date of deposit  when defendant affirmatively *1259 dealt with the property obtained as his own. He should not be allowed to benefit from the delay caused by his failure to remit the funds between the time the funds were received until they were deposited into his account on August 13, 1984.
It is unclear where the funds were between the date they were mailed and the date they were deposited in defendant's account. The action taken by defendant that objectively and clearly demonstrated misapplication of the funds and the resultant substantial risk of loss was the deposit of the funds into his own account on August 13, 1984. Defendant's action on that date constituted evidence of an element of the crime and was the cornerstone of the criminal conduct supporting his conviction. Prosecution prior to that occurrence may have been deemed precipitous.
[Ibid.]
Thus, although we did not couch our reasoning in terms of a "continuing course of conduct," we impliedly rejected such an argument by isolating as the controlling moment the date a defendant objectively and clearly deals with the property as his or her own. Ibid.
In the case before us, unlike in Modell, the funds were wired directly into defendant's account. Therefore, there was no period of ambiguity between receipt of the funds and misapplication by not immediately disposing of them in the manner required. Following Modell's reasoning, a plausible argument could be made that a period of ambiguity nevertheless existed for a short period of time after defendant received the funds in each case. If, for example, he did not pay off the old mortgage on the first day he was required to do so, or if he delayed for several days, but retained in his trust account the full amount of the funds, this act of omission in such a short time period might be deemed ambiguous as to his intent to misapply the funds. However, when defendant made the first monthly payment on the old mortgage in each case, rather than paying it off in full and having it canceled of record to protect the homeowners' and new lender's interests, as he was required to do, any ambiguity was at an end. At that moment, defendant objectively and clearly misapplied the funds entrusted to him, all elements of the offense occurred, and the offense was deemed committed. N.J.S.A. 2C:1-6c.
At that moment in each case, if not before, a substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted existed. The new lender did not have a first mortgage lien on the property, and the security of its funds was substantially at risk. The homeowners were also substantially at risk of losing their home, which was improperly encumbered by two mortgages and subject to possible foreclosure. We need not decide in this case whether the later date, on which defendant made the first monthly mortgage payment in each transaction, should trigger the running of the statute of limitations, because it is clear that a number of monthly payments were made on each of the four mortgages more than five years before the indictment was returned.
That the risk continued or might have increased after it was created does not change the fact that the risk previously created was substantial from the outset. Defendant's actions after the misapplication of the funds were designed to conceal his wrongdoing. These acts would presumably be evidential in proving the case against him, but they are not elements of the offense itself.
Courts have found a plain appearance that the Legislature intended to prohibit a continuing course of conduct in situations *1260 involving a common scheme of ongoing conduct and where, by the terms of the statute prohibiting the conduct, the amounts involved can be aggregated to form a single offense. See State v. Childs, 242 N.J.Super. 121, 134, 576 A.2d 42 (App. Div.) (finding a continuing course of conduct for theft by deception charges where defendant raised cash for his corporation by making false representations to induce investors to lend money in exchange for unsecured corporate notes later found to be worthless, noting that "[t]hefts aggregated pursuant to N.J.S.A. 2C:20-2b(4) constitute a single theft"), certif. denied, 127 N.J. 321, 604 A.2d 596 (1990); State v. Tyson, 200 N.J.Super. 137, 139-40, 150-51, 490 A.2d 386 (Law Div.1984) (finding continuous course of conduct where defendant made false representations to fraudulently obtain and renew welfare benefits noting that "[t]he defendant's course of conduct was one scheme extending over a period of time involving the same victim perpetrated by the same deception" in which "the fruits of the defendant's scheme were received in installments rather than in a lump sum," and that the "consolidation of theft offenses provision in N.J.S.A. 2C:20-2b(4)" applies).
However, in other situations, the argument has been rejected. See Toussie v. United States, 397 U.S. 112, 115-17, 90 S.Ct. 858, 860-61, 25 L.Ed.2d 156, 161-62 (1970) (holding that failure to register for the draft is complete immediately upon failure to register when required, and is not a continuing offense, notwithstanding the regulatory provision referring to draft registration as a "continuing duty"), superceded by, 50 U.S.C.A. § 462(d) (setting the limitation period for failure to register for the draft at either five years from the offender turning twenty-six or five years from the date the offender registers, whichever occurs first); State v. Weleck, 10 N.J. 355, 374-75, 91 A.2d 751 (1952) (holding that extortion and attempted extortion are not continuing offenses); State v. Insabella, 190 N.J.Super. 544, 553-54, 464 A.2d 1165 (App.Div.1983) (holding that tampering with a utility meter to obtain utility services fraudulently is not a continuing course of conduct offense, but is complete when the meter is physically altered); State v. Meltzer, supra, 239 N.J.Super. at 117, 570 A.2d 1042 (concluding "that it is not `plainly clear' the New Jersey Legislature intended to proscribe bail jumping as a continuous offense").
In our view, the statute in the case before us more closely resembles those in the latter line of cases than the former with respect to the statute of limitations analysis. Nothing in the statutory language of N.J.S.A. 2C:21-15 or in the nature of the conduct it prohibits evinces a clear legislative purpose to prohibit a continuing course of conduct after the misapplication of funds occurs. Relying upon those authorities, and amplifying the rationale we expressed in Modell, we therefore conclude that misapplication of entrusted property under N.J.S.A. 2C:21-15 is not a continuing course of conduct offense. Accordingly, the indictment was returned more than five years after the offenses alleged in counts one through four were committed, and the counts were properly dismissed for failure to commence the prosecution within the five-year limitation period.
Affirmed.
NOTES
[1] The indictment contains a fifth count charging defendant with third-degree issuing bad checks, in violation of N.J.S.A. 2C:21-5c(2) and N.J.S.A. 2C:21-8.1b. That count remains pending and is not implicated in this appeal.
[2] Although the issue is not before us, defendant was potentially liable under either sub-part of this element. He stood in a fiduciary relationship toward his clients as the closing attorney and probably toward the mortgage companies as the settlement agent. In addition, the mortgagees undoubtedly fall within the meaning of "financial institutions."