Herman TURNER (99–A–3159), Petitioner,

v.

John H. SABOURIN, Superintendent of Bare Hill Correctional Facility, Respondent.

Nos. 01–CV–5952 (JBW), 02–MISC–0066 (JBW).

United States District Court, E.D. New York.

July 17, 2003.

Katheryne M. Martone, The Legal Aid Society, New York City, for Petitioner.

Herman Turner, Beacon, NY, pro se.

Sholom J. Twersky, District Attorney of Kings County, Brooklyn, NY, for Respondent.

## MEMORANDUM & ORDER

WEINSTEIN, Senior District Judge.

The events in this case arise out of a shooting that occurred in Brooklyn over twenty years ago. Although the incident took place in 1982, petitioner Herman Turner was not indicted until 1999, when he was charged with second degree murder for the homicide. After a jury trial he was convicted of first degree manslaughter, a crime for which New York's ten-year limitations period had already run. The primary substantive question in this habeas corpus proceeding is whether, under the unusual circumstances of the instant case, it was proper for the trial court to allow the jury to consider the manslaughter charge. As frequently happens in habeas matters where a petitioner's claim may have merit, however, procedural considerations preclude this court from ruling on the substantive claim at this time.

A hearing was held in this matter. Petitioner was present by telephone, with counsel present in person. For the reasons discussed in this memorandum, the petition for a writ of habeas corpus will be stayed to allow Turner an opportunity to exhaust his claim in state court.

### I. Facts and Procedural History

The key facts in this matter are not in dispute. Turner shot and killed a man after a quarrel in his neighborhood in Brooklyn in 1982. Witnesses told police that the victim, a mechanic named Donald Holloman, was shot by Turner after Holloman advanced menacingly toward him with either a broken bottle or pipe. Holloman was apparently angered because petitioner told him he could not pay him for the repair work he had done on petitioner's car. . Turner tried to push Holloman away and then shot him twice.

Turner fled the scene and "vanished." Testimony from the witnesses at trial was that he was not seen in the neighborhood for at least a year. He also adopted a pseudonym—Johnny Johnson—following the incident.

Police did not file charges against Turner at the time. The case lay dormant until October 1997, when a new witness (who had himself received a suspended sentence for a murder) presented himself to police, claiming that he had seen Turner run from the crime scene with a gun in his hand and that he had recently seen him in the neighborhood. In

March 1998 petitioner was arrested and charged with second degree murder, an "A felony" in New York for which there is no statute of limitations.

At the close of the defense's case, the trial court asked the parties how they wanted the jury instructed, stating that he intended to charge only on second degree murder. The prosecution stated that it also wanted the court to charge the jury on the lesser-included offense of first degree manslaughter, which requires only a determination that defendant intended to seriously injure, rather than kill, the victim. Defense counsel stated that his client objected to a lesser-included offense charge, that Turner felt he was innocent of intentional homicide, and that he "does not want to give a jury the chance to compromise on a Manslaughter in the First Degree verdict." Trial Tr. at 258. The trial court decided to give the manslaughter charge, correctly stating that by statute when such a charge is requested and the evidence could support the lesser included charge, it must be given. *See* N.Y.Crim. Pro. Law § 330.50(2). Defense counsel did not argue that a manslaughter conviction was barred by the statute of limitations.

The jury acquitted Turner of second degree murder and convicted him of first degree manslaughter. He was sentenced to 8 to 16 years in prison.

Turner moved prior to trial to dismiss the indictment, alleging a violation of his due process rights as a result of pre-indictment delay in the prosecution of the case. The motion was denied by the Supreme Court after the trial was complete, partly on the ground that police acted reasonably in deciding not to charge Turner in 1988 based on the weak evidence they then possessed that petitioner had committed a crime:

Was the delay from 1983, when the defendant was first identified as the shooter, until 1998, when he was arrested, so unreasonable that it constituted a violation of the defendant's rights to due process and speedy prosecution? The answer is no. The original information possessed by the police in 1983 came from a possibly unreliable source or sources, contained a material inconsistency, and indicated that the shooter may not have committed a crime, but instead may have acted in self-defense. Such information warranted questioning of the defendant to obtain his version of the event, but not his immediate arrest. The defendant, however, by his disappearance and his use of an alias, made himself unavailable for questioning. Since the police had no additional information upon which to act and the defendant was not cooperating, there is no merit to the defendant's eleventh-hour complaint that he was denied due process and his constitutional right to a speedy trial because the police did not act until receiving new information in October of 1997 and February of 1998, linking him to the crime of murder and locating his whereabouts.

Having presided over the trial and heard all the evidence, this court is in a better position to assess the propriety of the initial decision by the police not to seek a warrant for the arrest of the defendant or a wanted card for him in 1983. Each of the witnesses who were present at the scene had severe credibility problems resulting mainly from significant criminal records. It was the cumulative effect of their testimony coupled with uncontradicted evidence of the defendant's sudden disappearance for years after the shooting and his use of an alias that resulted in the conviction. This court therefore cannot second-guess the actions of the police in hesitating to take the defendant into custody on the initial accounts of one or two witnesses.

May 6, 1999 Decision & Order at 2–3.

The conviction was appealed through counsel, who raised several potentially meritorious claims before the Appellate Division. Turner was unsatisfied with the brief, however, and sought leave from the Appellate Division to file a supplemental pro se brief which included the claim that the statute of limitations had run on any manslaughter charges and that therefore the trial court did not have "jurisdiction" over the matter. The motion to file a supplemental pro se brief was denied.

Turner subsequently filed a pro se application for a writ of error coram nobis before

the Appellate Division, claiming *inter alia* that his appellate counsel was ineffective for failing to argue the statute of limitations claim. That application was denied. He did not file a motion to vacate judgment.

Turner makes a number of claims in his pro se application for a writ of habeas corpus, including the ineffective assistance of appellate counsel claim that he raised before the Appellate Division when seeking coram nobis relief. After reviewing Turner's petition, this court asked the Criminal Appeals Bureau of the Legal Aid Society to represent Turner in this matter. The Legal Aid Society agreed to represent petitioner *pro bono*.

In a supplemental memorandum of law, Turner's counsel clarifies that petitioner argues that his appellate counsel was ineffective (1) for failing to claim on direct appeal that Turner's conviction for manslaughter was barred by the statute of limitations, and (2) for failing to claim on direct appeal that Turner's *trial* counsel was ineffective for failing to raise an objection at trial to the manslaughter charge on statute of limitations grounds.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

■ An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (en banc).

■ Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the

merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 WL 12142, at *4, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■■■■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir.2000). When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir.1996).

## V. Ineffective Assistance of Counsel

■■■■ The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also Wiggins v. Smith*, 539 U.S. ——, 123 S.Ct. 2527, 2531–32, 156 L.Ed.2d 471 (2003); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■■■■ The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the

record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes,* 337 F.3d 253, 2003 WL 253144, at *6, 2003 U.S.App. LEXIS 2053, at *18 (2d Cir.2003) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003).

As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins,* 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt,* 239 F.3d at 201 (same). The Court of Appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze,* 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic con-

siderations accounted for ... counsel's decisions").

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

 Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane,* 42 F.3d 738, 741 (2d Cir.1994).

 Although the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel. *See Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, *see Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). Either a federal or a state law claim that was improperly omitted from an appeal may form the basis for an ineffective assistance of appellate counsel claim, "so long as the failure to raise the state ... claim fell outside the wide range of professionally competent assistance." *Id.* (quotations omitted). Each significant factual claim in support of an ineffective-assistance allegation premised on appellate counsel's deficient performance must be exhausted. *See Word v. Lord,* No. 00 CIV. 5510, 2002 U.S. Dist. LEXIS 19923, at

*34–*35 (S.D.N.Y. Mar. 18, 2002) (Magistrate's Report and Recommendation) 2002 WL 32145769, at 11–12.

## VI. Certificate of Appealability

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir.2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

██ A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## VII. Analysis of Claims

Turner argues that his appellate counsel was ineffective (1) for failing to claim on direct appeal that Turner's conviction for manslaughter was barred by the statute of limitations, and (2) for failing to claim on direct appeal that Turner's *trial* counsel was ineffective for failing to raise an objection at trial to the manslaughter charge on statute of limitations grounds.

There is no statute of limitations for murder—an "A felony"—in New York. *See* N.Y.Crim. Pro. Law § 30.10(2)(a). There are statutes of limitations for all crimes except A felonies, including manslaughter, which is a B felony. "A prosecution for any [non-class A] felony must be commenced within five years after the commission thereof." N.Y.Crim. Pro. Law § 30.10(2)(b). This five-year time limitation can be tolled, but only for another five years at most:

> In calculating the time limitation applicable to commencement of a criminal action, the following periods shall not be included: (a) Any period following the commission of the offense during which (i) the defendant was continuously outside the state or (ii) the whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence. *However, in no event shall the period of limitation be extended by more than five years beyond the period otherwise applicable under subdivision two.*

N.Y.Crim. Pro. Law § 30.10(4) (emphasis added). By the plain language of the statute, under no circumstances may prosecution for a B felony commence more than ten years following the commission of the offense.

It is not self-evident that the tolling provision of section 30.10(4) should apply in the instant case. Police investigators knew that the shooter was Turner but made no efforts to indict him for the homicide. The trial court explicitly found that it was reasonable for the state not to indict him in 1983 because "the original information possessed by the police in 1983 came from a possibly unreliable source or sources, contained a material inconsistency, and indicated that the shooter may not have committed a crime, but instead may have acted in self defense," and that this information "warranted questioning of the defendant to obtain his version of the event, but not his immediate arrest." May 6, 1999 Decision & Order at 2–3. If the police were not warranted in arresting Turner and made no serious effort to track him down, it is questionable whether his "disappearance" should toll the statute. *Cf. People v. Seda,* 93 N.Y.2d 307, 690 N.Y.S.2d 517, 712 N.E.2d 682, 685 (1999) (tolling statute of limitations in "Zodiac Killer" case "[i]n light of the extensive and prolonged police manhunts" for the killer).

At any rate, whether the statute should be tolled is academic, since an indictment for manslaughter *must* be lodged within ten years of the commission of the offense—*i.e.,* within five years pursuant to section 30.10(2)(b), with a maximum extension of five additional years pursuant to section 30.10(4). Turner, in short, could not have been indicted for manslaughter sixteen years after the homicide occurred.

Of course, Turner was indicted for murder, not manslaughter. Can the state elude the

statute of limitations for manslaughter by piggybacking a B-felony charge onto an A-felony indictment? Under certain circumstances, the answer appears to be yes.

When Turner asked essentially this question of his appellate lawyer, she told him flat out that the state could avoid the statute of limitations with respect to the manslaughter charge. She refused Turner's request to raise the claim on direct appeal, even though he cited New York cases to her which seemed to support his statute of limitations argument. Appellate counsel explained her reasoning in an affirmation filed before the Appellate Division in response to Turner's pro se coram nobis application,

> In responding to Mr. Turner, I cited *People v. Dowling*, 1 N.Y. Cr. R. 529 (1884), for the proposition that a conviction for manslaughter as a valid lesser included offense could be had under an indictment for murder, even though the accused could not have been indicted for manslaughter because more than five years had passed since the commission of the crime. I also informed Mr. Turner that the cases he cited to me ... were not controlling in his case.... Finally, I noted that the submission of the manslaughter charge in Mr. Turner's case was not objected to on statute of limitations grounds at trial.
>
> In researching this issue, I did find that *People v. DiPasquale*, 161 A.D. 196[, 146 N.Y.S. 523] (3d Dept.1914), in which a conviction for attempted murder was held impermissible where the indictment was barred by statute of limitations, supported Mr. Turner's assertion that time lapse would prevent his conviction for manslaughter, assuming that lapse could be established. But, I also found *People v. Austin*, 170 N.Y. 585[, 63 N.E. 1120] (1902), which held that the statute of limitations as a defense to a lesser included charge could be raised only at trial, and had to be accompanied by an appropriate request to charge. [Citing cases.] The court in *DiPasquale* made no mention of the earlier holdings of *Austin* or *Dowling*. Additionally, the reversal in *DiPasquale* was based in part on the People's failure to prove the defendant's guilt of any crime

beyond a reasonable doubt. Given these differences, I determined that *DiPasquale* was also not strong authority for Mr. Turner's case.

[Appellate Counsel's] Affirmation in Response to Coram Nobis Application, at 6–7.

██ Counsel's explanation for her failure to raise the statute of limitations claim on direct appeal evinces a lack of familiarity with the relevant law and a misunderstanding of the manner in which legal precedent functions. For instance, her suggestion that Turner might be unable to establish a "time lapse" (presumably because by fleeing he was responsible for the delay in his indictment) fails to recognize that the ten-year limitations period of section 30.10 can under no circumstances be extended. As a general matter, because statutes of limitation "are granted by legislative grace, they are to be liberally construed in favor of a defendant." *People v. Gulston*, 181 Misc.2d 644, 695 N.Y.S.2d 888, 890 (Sup.Ct.1999); *see also People v. Seda*, 93 N.Y.2d 307, 311, 690 N.Y.S.2d 517, 712 N.E.2d 682 (1999) (one purpose of statute of limitations is to "encourag[e] law enforcement officials promptly to investigate suspected criminal activity").

More important is counsel's failure to appreciate the impact of *DiPasquale* on the instant case. In *DiPasquale*, the defendant was indicted for murder more than five years after the commission of the homicide. The question presented was whether the defendant could, upon the murder indictment, also be indicted for attempted murder or other degrees of homicide when each of these lesser-included offenses had the "perfect defense" of time bar and could not have been charged in an indictment on their own. The Appellate Division ruled that the murder charge could not serve as a vehicle for the indictment of otherwise time-barred charges. *See DiPasquale*, 161 A.D. 196, 146 N.Y.S. 523, 524–25 (1914).

Although *DiPasquale* is a hoary opinion, the Appellate Division seems not to have retreated from its central holding and it apparently remains good law. *See, e.g., People v. Hughes*, 220 A.D.2d 529, 632 N.Y.S.2d 585, 587–88 (1995) (citing *DiPasquale* approvingly and holding that a defendant cannot be con-

victed of time-barred offenses). Appellate counsel is correct that the earlier case of *People v. Dowling*, 1 N.Y. Cr. R. 529 (1884), stands for the proposition that a conviction for manslaughter as a valid lesser included offense could be had under an indictment for murder. She does not explain, however, why that *trial court* case—decided three decades *before* the Appellate Division's decision in *DiPasquale*—should be considered binding precedent over *DiPasquale*. *Cf. People v. Crosby*, 140 Misc.2d 904, 531 N.Y.S.2d 753 (Dist.Ct.1988) (following *DiPasquale*); *People v. Soto*, 76 Misc.2d 491, 352 N.Y.S.2d 144 (Crim.Ct.1974) (same); *cf. also People v. Lohnes*, 76 Misc.2d 507, 351 N.Y.S.2d 279, 281 (Sup.Ct.1973) (noting that the Appellate Division in *DiPasquale* reached the "opposite conclusion" of the trial court in *Dowling*).

It is perhaps worth noting in this context that the holding of *DiPasquale* is in no way unique to New York law, and that in fact the "overwhelming weight of authority is to the effect that one cannot be convicted of a lesser offense includible within a larger crime, where prosecution for the latter was commenced after expiration of limitations applicable to the lesser offense." Conviction of Lesser Offense, Against Which Statute of Limitations Has Run, Where Statute Has Not Run Against Offense With Which Defendant is Charged, 47 A.L.R.2d 887 at *2 (West 2002) (noting that the only jurisdiction with a contrary rule is Georgia). In her letter to Turner advising him that she would not pursue on direct appeal the statute of limitations claim, appellate counsel did not mention or discuss either *DiPasquale* or the analogous case law from other jurisdictions. *See* May 22, 2000 Letter from Jennifer Danburg to Herman Turner at 1–2.

██ Respondent offers several arguments in support of his contention that appellate counsel was not ineffective for failing to raise a statute of limitations claim—either directly or as part of an ineffective assistance of trial counsel claim—on direct appeal. First, respondent contends that appellate counsel properly understood that Turner's trial counsel, by not raising the statute of limitations claim at trial, had waived the claim and that appellate review would be

foreclosed. Under the authority of *People v. Austin* and subsequent cases, that argument is unassailable. *See People v. Austin*, 170 N.Y. 585, 586, 63 N.E. 1120 (1902) (statute of limitations defense with respect to a lesser-included offense must be raised at trial in order to be preserved for appeal); *see also People v. Rodriguez*, 237 A.D.2d 634, 655 N.Y.S.2d 1014, 1014 (1997); *People v. Verkey*, 185 A.D.2d 622, 585 N.Y.S.2d 897, 899 (1992); *People v. DePillo*, 168 A.D.2d 899, 565 N.Y.S.2d 650, 650 (1990) (all holding that limitations period is not jurisdictional and defense premised on it may be waived). Because trial counsel did not preserve the issue, appellate counsel acted reasonably by opting not to raise the inevitably barred claim on direct appeal in lieu of other, arguably stronger claims. Appellate counsel was not ineffective in this regard.

With respect to appellate counsel's failure to recognize the viability of a claim of ineffective assistance of trial counsel, respondent contends that her failure to raise the claim was sound because of the unsettled state of the law concerning a statute of limitations defense for a lesser-included charge. This argument is a good deal less compelling. At bottom the argument is premised on a single county court case in which an out-of-time misdemeanor charge was allowed to be included in the indictment as a lesser-included offense of a timely felony charge. *See People v. Cuddihy*, 170 Misc.2d 592, 650 N.Y.S.2d 957 (Cty.Ct.1996). The decision in *Cuddihy* is, simply stated, a singularity and is contrary to both *DiPasquale* and all other cases this court has reviewed on the topic. *See, e.g., People v. Gulston*, 181 Misc.2d 644, 695 N.Y.S.2d 888, 891 (Sup.Ct.1999) (refusing to follow *Cuddihy* and noting that its decision is inconsistent "with virtually every case in other jurisdictions that have addressed the issue" and with "the conclusions reached by commentators who have addressed the issue").

██ Resolution of the instant matter would be a simple matter if Turner had *sought* a charge instructing the jury that it could consider first degree manslaughter as a lesser-included offense of second degree murder. A defendant may waive a statute of

limitations defense at trial. *See Austin,* 170 N.Y. at 586, 63 N.E. 1120. New York courts have uniformly found that a defendant who requests a jury instruction on a lesser-included offense in situations like the present one waives the statute of limitations defense with respect to the lesser-included offense. *See People v. Mills,* 302 A.D.2d 141, 750 N.Y.S.2d 230, 232 (2002) ("Here, we conclude that, *by requesting* that the court charge criminally negligent homicide, defendant waived any statute of limitations defense applicable to that crime, defendant having accepted the benefit of general instructions to a jury allowing it to find lesser degrees of crime and thereby substantially reducing the range of sentence which the court could impose." (emphasis added)), *leave to appeal granted,* 99 N.Y.2d 587, 755 N.Y.S.2d 723, 785 N.E.2d 745 (2003); *People v. Dickson,* 133 A.D.2d 492, 519 N.Y.S.2d 419 (1987) (defendant may plead guilty to time-barred lesser-included offense).

The rationale behind these decisions is that defendants should be allowed the option of having the jury consider a lesser charge, where such a charge may be justified by the facts of the case, instead of having to roll the dice with the more serious charge. "Criminal defendants in general, and not merely in this case, would suffer marked injustice from being denied this option. It would have the practical effect, in case after case, of forcing convictions in a higher degree where guilt is plain, but where, if given the choice ... a jury might convict for the lesser included degree of a given crime." *Lohnes,* 351 N.Y.S.2d at 282.

A defendant may thus waive the statute of limitations defense in order to get the benefit of a lesser included offense charge. In the instant case, however, Turner explicitly informed the court that he did not want a lesser included offense charge. He therefore did not constructively waive his time bar "perfect defense" and did not seek the benefit of a charge on a reduced crime. Respondent's contention that petitioner nonetheless benefitted from the instruction—because petitioner would in all probability have been convicted of murder if that had been the

jury's only option—is, to say the least, speculative.

Jurors are presumed to have followed a trial judge's instructions. *See, e.g., United States v. Gallo,* 668 F.Supp. 736, 752 (E.D.N.Y.1987). In the instant case, the trial court instructed the jury, "If you find the defendant not guilty of the murder charge *then and only then* will you consider the lesser charge of Manslaughter in the First Degree." Trial Tr. at 356 (emphasis added). If the jury followed the judge's instructions, then it did not turn to the manslaughter charge until it had determined that petitioner was not guilty of murder. Of course, it is possible that the jury disregarded the judge's instructions and exercised mercy even though it found petitioner guilty beyond a reasonable doubt of all elements of the murder. *Cf. Spaziano v. Florida,* 468 U.S. 447, 455, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) ("The absence of a lesser included offense instruction increases the risk that the jury will convict, not because it is persuaded that the defendant is guilty of ... murder, but simply to avoid setting the defendant free."). Nonetheless, this court is disinclined to conclude, based only on speculation, that there is no reasonable probability that the jury would have acquitted petitioner of murder if no manslaughter charge had been open to them.

The question now reduces to this: Was appellate counsel ineffective for failing to raise an ineffective assistance of trial counsel claim, premised on trial counsel's failure to invoke New York's statute of limitations as a defense against Turner's manslaughter charge? A reasonable jurist could conclude (1) that trial counsel performed below a constitutionally minimal standard by failing to recognize, raise and preserve the statute of limitations claim at trial; (2) that trial counsel had no strategic reason not to raise the statute of limitations claim given Turner's insistence that the court submit only a murder charge to the jury; (3) that petitioner was prejudiced by this failure because he was acquitted of the murder charge; (4) that if appellate counsel were sufficiently familiar with the law on this subject, she would have heeded her client's request to raise the ineffectiveness claim on direct appeal; (5) that

her apparent lack of understanding of the law surrounding this issue demonstrates that her failure to raise (what appears to be) a dead-bang winner of a claim was not motivated by strategy; and (6) that Turner was prejudiced by appellate counsel's performance because the Appellate Division was not afforded the opportunity to address a meritorious claim. These observations having been made, the question is not one that this court may reach at the present time.

■ Although petitioner applied for a writ of error coram nobis before the Appellate Division, his allegations of ineffective assistance of appellate counsel did not raise the specific (ineffective assistance of trial counsel) ground discussed at length in this memorandum. Petitioner did claim that appellate counsel was ineffective for failing to raise the claim that his conviction for manslaughter was barred by the statute of limitations. That claim is insufficient to exhaust the ineffectiveness claim, however, because it is truly of a different nature and poses a different question. As discussed earlier, appellate counsel properly chose not to raise the direct statute of limitations claim because it was unpreserved by trial counsel and would surely have been dismissed out of hand on direct appeal. Appellate counsel's failure to raise the claim that trial counsel failed to preserve the limitations issue, however, is a distinct question that the Appellate Division was never asked to consider. The claim is therefore unexhausted.

Were the appellate ineffectiveness claim meritless, this court could decide it as part of a denial of the entire habeas corpus application. If the claim were procedurally barred from presentation in the state courts, this court could deem it exhausted but barred from substantive review in the instant proceeding. Neither situation holds. Turner's ineffective assistance claim has potential merit, though this court offers no conclusions at the present time as to whether it should ultimately succeed. Denial of the claim is thus inappropriate. Dismissal is also inappropriate because petitioner is not barred from raising the claim in a second coram nobis application before the Appellate Division, where he may still be afforded relief in the form of a new appeal. *See State v. Bachert,* 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318, 321–22 (1987); *see generally* Stanley H. Fuld, *The Writ of Error Coram Nobis,* N.Y. L.J., June 5, 1947, at 2210 (recounting the history of the common law writ in England, noting its resurrection in American law, and anticipating its equitable expansion in modern times).

The proper course is therefore to stay the instant proceedings. Discussion of the remaining claims raised by petitioner in his habeas corpus application is unnecessary at present.

VIII. Conclusion

The instant proceedings are ordered stayed to allow petitioner the opportunity to exhaust his claims in state court.

The clerk of the court is order to administratively close this case unless or until either of the parties moves to restore the matter or takes other appropriate action.

Petitioner is warned that he may be barred from reopening his federal habeas petition on statute of limitations or other grounds if he delays in initiating collateral proceedings in state court or if, having been denied relief in state court, he delays in seeking to reopen these federal proceedings. The parties are advised that the Court of Appeals for the Second Circuit has found a reasonable period of time in which to initiate state collateral proceedings to be thirty days and that a reasonable period of time in which to reopen federal proceeding following a state court decision also to be thirty days. *See Zarvela v. Artuz,* 254 F.3d 374, 380–81 (2d Cir.2001).

Respondent may move, on notice to petitioner, to vacate the entered stay and to dismiss the petition for failure to prosecute or on other grounds.

SO ORDERED.